RONALD BALDASSARI & others[1] vs. PUBLIC FINANCE
TRUST & another.[2]

Suffolk.    September 17, 1975. — November 6, 1975.

Present: TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Consumer Protection Act.    Equity Jurisdiction,* Consumer protection
case.    *Pleading, Civil,* Complaint, Consumer protection case.
*Practice, Civil,* Class action.    *Limitations, Statute of.*

In a purported consumer class action by debtors under G. L. c. 93A,
§ 9 (2), and Mass. R. Civ. P. 23, 365 Mass. 767 (1974), against a
finance company, it was within the trial judge's discretion to post-
pone discovery sought by the plaintiffs until the preliminary hear-
ing and decision on whether they "adequately and fairly" repre-
sented "numerous" other persons [35-37]; the bill sufficiently al-
leged that such other persons were "similarly situated" and suffered
"similar injury" [37].
Where debtors claimed commission by a finance company of unfair
or deceptive business acts or practices and sent it a proper written
demand for relief pursuant to G. L. c. 93A, § 9 (3), identifying
the claimants and reasonably describing the acts or practices relied
on and the injury suffered by them, and subsequently brought a
purported consumer class action against the company, others
similarly situated with the plaintiffs properly joined in the action
even though such others had not sent demands for relief to the
defendant and were not identified in the original plaintiffs' de-
mands. [38]
Claims by debtors against a finance company for alleged collection
of debts in an unfair, deceptive or unreasonable manner in viola-
tion of G. L. c. 93, § 49, were essentially for personal injuries,
and c. 260, § 2A, inserted by St. 1948, c. 274, § 2, barred causes
of action based on acts committed by the company prior to two
years before commencement of a class action against it under G. L.
c. 93A, § 9 (2) by the debtors.    [38-41]

---

[1] Joy Baldassari, James Mayo and Mary Mayo.

[2] American Investment Company.

G. L. c. 260, § 5A, inserted by St. 1975, c. 432, § 2, did not revive consumer actions barred before its effective date by a prior statute of limitations. [43]

The sending of a written demand for relief pursuant to G. L. c. 93A, § 9 (3), to a finance company by debtors claiming commission by it of unfair or deceptive business acts or practices was not the commencement of a consumer class action subsequently filed against the company by the debtors, and causes of action based on acts committed by the defendant prior to two years before the filing of the action were barred by the statute of limitations. [41-44]

A purported consumer class action by debtors against a finance company for alleged collection of debts in an unfair, deceptive or unreasonable manner in violation of G. L. c. 93, § 49, was properly dismissed where the only allegation in the complaint of injury to the plaintiffs was suffering of "severe emotional distress," and there was no allegation that any plaintiff suffered "loss of money or property, real or personal" as required by c. 93A, § 9 (1), for maintenance of an action under § 9 (2). [44-46]

BILL IN EQUITY filed in the Superior Court on May 8, 1974.

The suit was heard by *Ford, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Lisa K. Fitzgerald & Jeffrey W. Kobrick* for the plaintiffs.

*Verne W. Vance, Jr.,* for the defendants.

BRAUCHER, J. This is a consumer class action for an injunction and damages against a Massachusetts finance company and its out-of-State parent corporation, based on alleged collection of debts in an unfair, deceptive or unreasonable manner in violation of G. L. c. 93, § 49, inserted by St. 1970, c. 883, § 1. We review the procedure followed in the trial court under G. L. c. 93A, § 9, and Mass. R. Civ. P. 23, 365 Mass. 767 (1974), and hold that the action was properly dismissed both as a class action and as an individual action by the named plaintiffs under G. L. c. 93A, § 9 (1). The Baldassari claims, we hold, were barred by G. L. c. 260, § 2A, inserted by St. 1948, c. 274, § 2, the two-year statute of limitations governing actions of tort; moreover, we hold

that all the plaintiffs' claims fail because no "loss of money or property" by them is alleged as required by § 9 (1).

We recognize that our disposition of this case is not entirely satisfactory. The plaintiffs allege clear, serious and continuing violations of G. L. c. 93, § 49, and there must be some remedy. The Attorney General can sue for an injunction under G. L. c. 93A, § 4. The plaintiffs could undoubtedly have maintained an action apart from c. 93A for damages, at least if they could show bodily harm. *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 253 (1971). Perhaps they also could have obtained injunctive relief apart from c. 93A, but that is not what they now press on us. With respect to the claim under c. 93A which they do press, we are limited by the clear terms of the statute.

1. *The plaintiffs' allegations.* We summarize the allegations of the plaintiffs' bill in equity, filed on May 8, 1974. The defendant Public Finance Trust (Public), doing business as Public Finance Company, is a Massachusetts business trust engaged in the business of making loans through approximately forty offices in Massachusetts. All its shares are held by American Investment Company (American), a Delaware corporation, which controls the policies of Public.

On September 1, 1971, two of the plaintiffs, the Baldassaris, after a series of consumer credit transactions, were some $213.30 in arrears on a total balance of over $3,300 owed to Public. For three months thereafter, the defendants or their agents, servants or employees attempted to collect the debt in an unfair, deceptive or unreasonable manner, entailing (a) numerous harassing telephone calls to the Baldassari residence, often before 9 A.M. and after 6 P.M., totaling 180 calls in nine weeks; (b) use of false identities, threats of legal actions never subsequently commenced, use of offensive, embarrassing and abusive language, and threats to publish the Baldassaris' credit record to an unauthorized third party; (c) on one occasion, appearance at the Baldassari residence and ringing

of the doorbell over 100 times to coerce payment; (d) contacts with unauthorized third persons, including Ronald Baldassari's employer, and communication to them of the Baldassaris' debt situation; (e) direct communication with the Baldassaris after the defendants had received written notice from counsel for the Baldassaris that all further communications relating to the consumer debt were to go only to counsel; (f) at least twenty-four unrequested visits to the Baldassaris in an attempt to collect the debt, on an average of twice a week for three months. On two occasions between October 1, 1971, and January 7, 1972, agents, servants or employees of the defendants encountered Ronald Baldassari in a public area and, by force or threats, caused him, against his will, to dress and accompany them to Public's office, which he was not free to leave until he communicated with the office manager about the debt.

After a series of consumer credit transactions with the defendants, the other two named plaintiffs, the Mayos, on January 14, 1972, were $64 in arrears on a balance of $1,920. Thereupon the defendants attempted collection in an unfair, deceptive or unreasonable manner for a period of thirteen months. The collection practices complained of are alleged in terms substantially similar to those described in items (a) through (e) above with respect to the Baldassaris.

On September 20, 1972, the Baldassaris sent a "formal demand letter" to Public and its office manager. The letter consisted of seventeen single spaced typed pages; it included, as one of eleven separate types of acts or practices relied on, a description of collection attempts substantially like those described above. The letter expressed the belief that numerous persons to whom Public had extended credit had been injured in a similar manner, stated an intention to maintain a class action on behalf of such persons, and demanded that any tender of settlement include suitable arrangements for the compensation and protection of the class. After receiving the letter the

defendants communicated false information about the Baldassaris to a credit reporting agency, and the false information has since impaired the Baldassaris' ability to secure consumer credit.

The bill states that the plaintiffs bring the action on behalf of themselves and five described classes of persons who are now or may become similarly situated. Each class is composed of persons subjected to a particular type of practice of the defendants: (1) communications with third persons in violation of G. L. c. 93, § 49 (a); (2) communications after notification by an attorney, contrary to G. L. c. 93, § 49 (b); (3) threats of violence, use of offensive language, or threats of action not taken, all contrary to G. L. c. 93, § 49 (c); (4) unrequested telephone calls in violation of G. L. c. 93, § 49 (c), if there were more than four such calls in a one-month period or more than sixteen such calls in a twelve-month period; (5) unrequested visits in violation of G. L. c. 93, § 49 (c), if there were more than three such visits in a three-month period or more than four such visits in a twelve-month period. Each class is limited to persons whose debts arose from contracts made since August 14, 1968, and to actions of Public in Massachusetts after that time. It is alleged that each class meets the six requirements of Mass. R. Civ. P. 23 (a) and (b), 365 Mass. 767-768 (1974), that the actions complained of are actions which the defendants use commonly and repeatedly in the collection of debts owed to them, and that the defendants have employed each type of practice against a minimum of twenty-five persons during the time and location limits specified.

It is also alleged that the defendants' actions were done without privilege, were extreme and outrageous, and were intentionally done so as to cause severe emotional distress to the plaintiffs, and did cause such distress, and that the plaintiffs have no adequate remedy at law. Damages and temporary and permanent injunctions are sought, together with attorney's fees and costs.

2. *The proceedings below*.  Pursuant to Mass. R. A. P. 8 (d), 365 Mass. 849 (1974), the parties have agreed on a statement showing how the issues presented by the appeal arose and were decided in the Superior Court.  The judge allowed the plaintiffs discovery only on a very limited basis, ruling that issues of class representation should first be heard and decided on the assumption that the plaintiffs' allegations of fact were true.

After a hearing the judge filed a written memorandum of decision on the class issues.  He ruled that the Mayos had no standing to sue Public, either individually or as class representatives, since they had alleged no demand for relief under G. L. c. 93A, § 9 (3).  As against American, a foreign corporation, however, no such demand was required.  He also ruled that the members of the alleged classes were not "similarly situated" to the named plaintiffs as required by § 9 (2).  He therefore denied the plaintiffs' motion to certify the class, and allowed so much of the defendants' motions to dismiss as alleged an improper class action and the failure of the Mayos to make a statutory demand against Public.

After a subsequent hearing, the judge filed a second memorandum of decision.  He ruled that the remaining individual actions of the Baldassaris were subject to a two-year statute of limitations, G. L. c. 260, §§ 2A, 4, and were barred.  As to the Mayos, he ruled that any claims based on acts prior to May 8, 1972, were barred. He further ruled that none of the plaintiffs had alleged any loss of money or property, real or personal, as required by G. L. c. 93A, § 9 (1).  They had therefore failed to state any claim on which relief could be granted. A final judgment was entered dismissing the actions of all plaintiffs against all defendants, and the plaintiffs appealed.

3. *Tort claims apart from c. 93A*.  The bill in equity can be read to include tort claims for false imprisonment and for intentional infliction of emotional distress.  In ruling on the statute of limitations the judge said that

G. L. c. 260, § 4, was applicable to the Baldassaris' allegations of false imprisonment; he also cited *George* v. *Jordan Marsh Co.*, 359 Mass. 244 (1971), a case of intentional infliction of emotional distress. Such claims can be made apart from G. L. c. 93A, § 9, without compliance with the requirements of that section. Violations of G. L. c. 93, § 49, such as those alleged here, may also give rise to tort claims. The propriety of injunctive relief in such a case is governed by traditional standards, and the propriety of a class action is subject to Mass. R. Civ. P. 23. This case, however, has been argued to us entirely as a case under c. 93A, § 9, and we therefore do not pass on any claims arising apart from c. 93A. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

4. *Class action issues.* We agree with the judge that Mass. R. Civ. P. 23, unlike the corresponding Federal rule, Fed. R. Civ. P. 23 (c) (1), does not provide for a motion to certify that an action may proceed as a class action, but that such motions are often necessary and desirable for the efficient handling of class actions. It was therefore properly within his discretion to postpone discovery and to make an early ruling on the class action issues. Indeed § 9 (2) mandates a "preliminary hearing" on the adequacy of the representation of the class.

The judge ruled that the language "similar injury" and "similarly situated" in G. L. c. 93A, § 9 (2),[3] imposed "substantially the same requirements imposed by the

---

[3] As inserted by St. 1969, c. 690: "(2) Any persons [*sic*] entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons; the court shall require that notice of such action be given to unnamed petitioners in the most effective practicable manner. Such action shall not be dismissed, settled or compromised without the approval of the court, and notice of any proposed dismissal, settlement or compromise shall be given to all members of the class of petitioners in such manner as the court directs."

common law and by new Rule 23." He cited *Spear* v. *H. V. Greene Co.*, 246 Mass. 259, 267-268 (1923), which seems to require that the members of the class suffer a "joint wrong." We think this is too restrictive a standard, both under our Rule 23 and under § 9 (2). It seems clear that the purpose of the 1966 amendment to Federal Rule 23 was to enlarge the scope of the class action device. Section 9 (2) was obviously written in the light of the Federal rule, but some of the restrictions in the Federal rule were omitted. The same is true of our Rule 23. See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 700 n.16 (1975); Rice, New Private Remedies for Consumers: The Amendment of Chapter 93A, 54 Mass. L. Q. 307, 315-316 (1969).

Section 9 (2) explicitly requires that the class be "numerous" and that the named plaintiff "adequately and fairly represents" it. Doubtless the other two requirements of Federal and Massachusetts Rules 23 (a) must also be met: there must be common questions of law or fact, and the claims of the named plaintiff must be "typical." But the statute omits the requirements of Federal Rule 23 (b) (3) and of our Rule 23 (b) that the common questions "predominate" over individual questions and that the class action be "superior" to other available methods for fair and efficient adjudication. See Smith & Zobel, Rules Practice § 23.10 (1975). The predominance and superiority requirements introduce a highly discretionary element. See *Yaffe* v. *Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972). The statute has a more mandatory tone. We do not believe that the subsequent adoption of Rule 23 was intended to curtail any remedial rights granted by the statute. We think the plaintiffs sufficiently alleged that the members of the plaintiff class were "similarly situated" and suffered "similar injury."

In view of our conclusions on other issues, we do not now pursue the class action issues in further detail. But we take note again of the fact that the statute was designed to meet a pressing need for an effective private

remedy, and again declare that traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.    See *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 699-700 (1975).   Cf. *Commonwealth* v. *DeCotis*, 366 Mass. 234, 245-246 (1974); *Shepard* v. *Finance Associates of Auburn, Inc.*, 366 Mass. 182, 191 (1974).

5. *The demand letter.*    Under G. L. c. 93A, § 9 (3),[4] a demand letter listing the specific unfair practices claimed is a prerequisite to suit and as a special element must be alleged and proved. *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812 (1975).   The Baldassaris sent such a letter, claiming relief on behalf of themselves and others similarly situated; the Mayos did not.    The defendants concede that the Mayos could nonetheless be members of the plaintiff class entitled to share in any recovery in a

---

[4] As inserted by St. 1969, c. 690: "(3) At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.   Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner.   In all other cases, if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two.   In addition, the court shall award such other equitable relief, including an injunction, as it deems to be necessary and proper.   The demand requirements of this paragraph shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth, but such respondent may otherwise employ the provisions of this section by making a written offer of relief and paying the rejected tender into court as soon as practicable after receiving notice of an action commenced under this section."

proper class action. But, they contend, the Mayos cannot sue in their own names or as representatives of others, since the demand letter must be one "identifying the claimant" and the Mayos were not identified in the letter.

We do not agree. If a proper demand is made by one plaintiff, identifying him as the claimant and reasonably describing the act or practice relied on and the injury suffered by him, we think he and others similarly situated may join in a class action to redress that injury and similar injuries caused by the same act or practice. Multiple demands for relief need not be filed on behalf of all the members of the class. If no reasonable tender of settlement is made in response to the first demand, further demands are not likely to serve any useful purpose and are not required. The modern class action is "designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe & Constr. Co.* v. *Utah,* 414 U.S. 538, 550 (1974). Cf. *Bowe* v. *Colgate-Palmolive Co.,* 416 F.2d 711, 719-720 (7th Cir. 1969); *Oatis* v. *Crown Zellerbach Corp.,* 398 F.2d 496, 498-499 (5th Cir. 1968); *DeFigueiredo* v. *TWA,* 322 F. Supp. 1384, 1385-1388 (S.D.N.Y. 1971).

A separate question would be presented if the plaintiff who made the statutory demand were shown to have accepted a tender of settlement by the defendants, or to have rejected a reasonable tender of settlement, or if the court properly refused to certify the class, for example, because it was not "numerous." Since no such situation has yet arisen, we do not now undertake to decide whether in such a case another claimant's right to sue would depend on his sending a second demand letter.

6. *The statute of limitations.* The judge ruled that all the plaintiffs' claims under G. L. c. 93A were subject to G. L. c. 260, § 2A, inserted by St. 1948, c. 274, § 2, requiring that actions of tort and actions of contract to recover for personal injuries be commenced within two years after the cause of action accrues. The parties agree that the action was commenced on May 8, 1974, and the

judge ruled that causes of action based on acts prior to May 8, 1972, were barred. We agree. The plaintiffs make no separate argument with respect to the alleged communication of false information about the Baldassaris after September 20, 1972, and we do not consider that allegation.

The plaintiffs rely heavily on *Commonwealth* v. *De-Cotis*, 366 Mass. 234 (1974), as establishing a six-year limitation period for claims under G. L. c. 93A. But no issue with respect to the period of limitations was raised or decided in that case. The claims there were for restitution of money paid, and if the point had been raised, the six-year period of G. L. c. 260, § 2, for actions of contract, other than those to recover for personal injuries, might have been held applicable. Cf. *New Bedford* v. *Lloyd Inv. Associates, Inc.*, 363 Mass. 112, 119-120 (1973); *Kagan* v. *Levenson*, 334 Mass. 100, 103 (1956). Since here the claims were essentially for personal injuries, the two-year statute applies to actions of contract as well as to actions of tort. It applies in equity as well as at law. See *Hendrickson* v. *Sears*, 365 Mass. 83, 85 (1974). Cf. *Momand* v. *Universal Film Exchs. Inc.*, 172 F.2d 37, 47 (1st Cir. 1948), cert. denied, 336 U.S. 967 (1949) (antitrust claims).

Recent amendments to G. L. c. 260, § 2A, do not affect this case. The two-year period was changed to three years by St. 1973, c. 777, § 1, but by § 4 that act applies to causes of action arising after January 1, 1974. Under G. L. c. 260, § 5A, inserted by St. 1975, c. 432, § 2, actions arising on account of violations of any law intended for the protection of consumers, including G. L. c. 93, § 49, and c. 93A, shall be commenced only within four years after the cause of action accrues. But the 1975 statute does not serve to revive actions barred before its effective date. *Page* v. *Melvin*, 10 Gray 208, 210-211 (1857). *Wright* v. *Oakley*, 5 Met. 400, 407 (1843). Contrast *Lindberg* v. *State Tax Comm'n*, 335 Mass. 141, 143-144 (1956).

Contrary to the plaintiffs' contention, the sending of a demand letter was not the commencement of an action so as to satisfy the requirement of the statute of limitations. Even the filing of a petition in court did not have that effect under our prior practice, now changed by Mass. R. Civ. P. 3, 365 Mass. 733 (1974). *Mayor of Revere* v. *District Court of Chelsea,* 262 Mass. 393, 395-396 (1928). Cf. *Burns* v. *Massachusetts Institute of Technology,* 394 F.2d 416, 419 (1st Cir. 1968). Since the point has not been argued, we do not now consider whether the thirty days between the mailing or delivery of the demand letter and the maturing of the right to sue should be included in the period of limitations. See *Johnson* v. *Railway Express Agency, Inc.,* 421 U.S. 454, 465-467 (1975), and cases cited.

7. *Loss of money or property.* The judge ruled that all the plaintiffs' claims not otherwise barred failed because there was no allegation that any plaintiff suffered a "loss of money or property, real or personal," as required by G. L. c. 93A, § 9 (1).[5] Only a person entitled to bring an action under § 9 (1) is authorized to maintain a class action under § 9 (2). We agree with the judge's ruling, and on this ground we hold that it was proper to dismiss the action as to all the plaintiffs' claims under c. 93A against all defendants.

The plaintiffs argue that no allegation of loss of money or property was mentioned in the comprehensive discussion of pleading under § 9 in *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 700-705 (1975), failing to note

---

[5] As amended by St. 1971, c. 241: "(1) Any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of an unfair or deceptive act or practice declared unlawful by section two or by any rule or regulation issued under paragraph (c) of said section two may, as hereinafter provided, bring an action in the superior court in equity for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."

that the bill in that case alleged damages suffered and expenses incurred by the plaintiff. *Id.* at 178. The present bill alleges only "severe emotional distress."

Alternatively, the plaintiffs argue that an allegation of loss of money or property is not required when violations of G. L. c. 93, § 49, are in issue, because that section expressly provides that failure to comply constitutes an unfair or deceptive act or practice under c. 93A. They recognize that this provision enables the Attorney General to bring suit for an injunction, but urge that private actions are also contemplated and that the forbidden unfair collection practices are not generally of a type reasonably calculated to produce financial harm. We fail to understand how these arguments can justify ignoring the plain language of § 9.

If an allegation of loss of money or property is essential, the plaintiffs claim that they have sufficiently alleged that they were deprived of the benefit of contractual and statutory rights to protection against harassing collection practices and that those rights are property. They also assert that their loss of time amounts to a loss of money. We think, however, that in § 9 (1) "money" means money, not time, and that "property" means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty. A different question would be presented if it were alleged that the plaintiffs paid debts they did not owe, lost wages or other income, or suffered expense.

There are statutory precedents. Under § 4 of the Clayton Act, enacted in 1914, 15 U.S.C. § 15 (1970), a private right of action is given to a person "injured in his business or property" as a result of antitrust violations. The Federal courts have dismissed such actions where the plaintiff's injury, although real, was not an injury to business or property. *Duff* v. *Kansas City Star Co.*, 299 F.2d 320, 322-325 (8th Cir. 1962), and cases cited. *Hamman* v. *United States*, 267 F. Supp. 420, 432 (D. Mont. 1967). The Uniform Consumer Sales Practices Act, promulgated

in 1970, permits a consumer who "suffers loss" as a result
of a violation to sue for "actual damages"; whether or not
he is entitled to damages, he may bring a class action for
declaratory or injunctive relief, § 11 (a), (b).   Compare
Uniform Consumer Credit Code § 5.108 (2) (5), as pro-
mulgated in 1974, authorizing a consumer to sue for an
injunction and "any actual damages" for unconscionable
conduct in collecting a debt; the Magnuson-Moss War-
ranty — Federal Trade Commission Improvement Act,
enacted January 4, 1975, 15 U.S.C. § 2310(d)(1) (Supp.
V, 1975), authorizing an action by a consumer "damaged"
by a failure to comply with a warranty.

   According to the principal draftsman of G. L. c. 93A,
§ 9, the "sole purpose" of the requirement that the plain-
tiff suffer loss of money or property "is to guard against
vicarious suits by self-constituted private attorneys general
when they spot an apparently deceiving advertisement in
the newspaper, on television or in a store window."   Rice,
New Private Remedies for Consumers:   The Amendment
of Chapter 93A, 54 Mass. L. Q. 307, 314 (1969).   Cf.
Norstrand, Treble Damage Actions for Victims of Unfair
and Deceptive Trade Practices:   A New Approach, 4 New
England L. Rev. 171, 174 (1969).   The plaintiffs here
have alleged grievances which are not at all "vicarious,"
but we do not think they have alleged "loss of money or
property."   The statute requires such a loss in all cases,
and does not dispense with it in cases where the grievance
is not vicarious.

*Judgment affirmed.*