MARTIN HALPER vs. GEORGE P. DEMETER, individually and as trustee.[1]

No. 91-P-329.

Suffolk. March 12, 1992. - April 1, 1993.

Present: PERRETTA, SMITH, & JACOBS, JJ.

*Consumer Protection Act*, Attorney's fees, Businessman's claim, Damages, Demand letter, Emotional distress, Landlord and tenant, Offer of settlement, Pleading. *Landlord and Tenant*, Assignment of lease. *Unlawful Interference*. *Damages*, Consumer protection case, Emotional distress, Loss of profits. *Words*, "Loss of money or property."

In the circumstances of the trial of a claim under G. L. c. 93A, § 11, where the defendant did not have adequate notice through pleadings, discovery or the evidence presented that the plaintiff was proceeding on a theory based on the totality of the defendant's conduct, rather than his conduct toward the plaintiff after the plaintiff commenced the proceeding, so that the defendant had not had an opportunity to tender a reasonable settlement offer pursuant to § 11, the judge's award of double damages and attorney's fees to the plaintiff was error. [300-303]

At the trial of claims under G. L. c. 93A, § 11, where the plaintiff did not prove "loss of money or property" he was not entitled to relief under that statute. [303-305]

At the trial of a claim for unreasonable refusal to consent to the assignment of a commercial lease and related claims, the judge applied the correct legal standards. [305-306]

At the trial of a claim for unlawful interference with an advantageous relationship, there was no basis in the record for an award of damages for emotional distress; however, damages awarded for loss of profits were supported in the record. [306-307]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1986.

The case was tried before *Walter E. Steele*, J.

*James W. Stoll* (*Barbara A. Lenk* with him) for the defendant.

[1]Of the Demeter Realty Trust.

*Richard M. Zielinski* (*Noel A. Gittens* with him) for the plaintiff.

JACOBS, J. After a trial without jury, a Superior Court judge found that the defendant landlord unreasonably refused to consent to the assignment of a restaurant lease, thereby causing the plaintiff to suffer damages in the amount of $379,322. The judge also found that the defendant unlawfully interfered with the plaintiff and awarded similar loss of profit damages. Those damages were doubled pursuant to G. L. c. 93A, § 11, and emotional distress damages in the amount of $10,000 were added resulting in the entry of a judgment for the plaintiff in the amount of $768,644 plus interest and attorney's fees. Judgment was also entered for the plaintiff on the defendant's counterclaim for unpaid rent.

The judge found that the defendant had violated an express lease provision by unreasonably withholding his consent to the plaintiff's assignment of his leasehold interest to a potential purchaser of the plaintiff's restaurant business. He also concluded that the defendant had violated G. L. c. 93A, § 11, by a course of conduct which, in totality, constituted a "larger plan to avoid his contractual obligations and to undermine [the plaintiff's] desperate efforts to sell the restaurant."

1. *The G. L. c. 93A claim.* We agree with the defendant's contention that, in the circumstances of the pleadings and trial of this case, the judge erred in basing liability under c. 93A on a totality of conduct analysis. The plaintiff in his original complaint had sought a declaration of his right to assign his leasehold interest (Count I), and he had alleged breach of contract (Count II) and tortious interference with prospective economic advantage (Count III). The request for declaratory relief was later waived. The plaintiff's c. 93A claim (Count IV) was first disclosed in an amended complaint in which he alleged that the defendant's "conduct in filing meritless Default Notices and a Notice of Termination of [the plaintiff's] tenancy subsequent to and in direct retaliation for [the plaintiff's] commencement of this lawsuit constitute unfair and deceptive acts and practices, in violation of

the provisions of G. L. c. 93A, §§ 2 and 11 . . . ."[2] In his opening statement, plaintiff's counsel repeatedly referred to the c. 93A claim as being related to the retaliatory acts of the defendant which occurred after the plaintiff filed suit. In requests for findings filed at the commencement of the trial, he defined the c. 93A violations in terms of the defendant's retaliatory actions. The first articulation of a totality of conduct claim, encompassing acts which occurred both before and after the filing of suit, surfaced during the plaintiff's closing arguments and in his supplemental requests for findings filed after the close of evidence.[3]

The issue is whether the defendant received adequate notice of the totality of conduct claim, and that question must be examined in light of the objectives of c. 93A. Among the prime goals of the statute is the "promotion of reasonable settlement offers." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 857 (1983). "Indeed, the conduct proscribed by the statute is as much the failure to make a reasonable settlement offer as it is the substantive violation of c. 93A." *Ibid.* Section 11, the provision invoked by the plaintiff in his c. 93A claim, permits a party responding to a complaint to avoid penalty damages by tendering a reasonable settlement offer *with his answer*.[4] Given the high stakes connotations of

---

[2]This complaint more appropriately should have been styled a supplemental pleading. Mass.R.Civ.P. 15(d), 365 Mass. 762 (1974). See *Tisei* v. *Building Inspector of Marlborough*, 5 Mass. App. Ct. 328, 333-334 (1977).

[3]After two days of trial, the parties, on September 11, 1987, reported the case settled, whereupon the trial was suspended. After the settlement foundered the trial could not be resumed until March 27, 1989, because of scheduling difficulties. The evidence was closed on March 29, 1989.

[4]General Laws c. 93A, § 11, as inserted by St. 1972, c. 614, § 2, states in pertinent part:

"Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal, as a result of the use or employment by another person who engages in any trade or commerce of . . . an unfair or deceptive act or practice declared unlawful by section two . . . may . . . bring an action . . . . The respondent may tender with his answer in any such action a written offer of settlement for single damages. If such tender or settlement is rejected by the petitioner, and if the court finds that the relief tendered was reasonable in relation to

c. 93A allegations, see *Cassano* v. *Gogos,* 20 Mass. App. Ct. 348, 351 (1985), and the fact that a damage-limiting tender of settlement ordinarily must be filed before meaningful discovery can be obtained, it is imperative, if a defendant is not to be placed at an unfair disadvantage, that the complaint, the first statutorily required identification of unlawful activity under § 11,[5] give fair notice of the precise nature of the plaintiff's allegation.

Here, the plaintiff chose essentially to limit his c. 93A count and his response to discovery concerning the amended complaint to a claim that the defendant retaliated against the bringing of the instant action by filing default and eviction notices.[6] The defendant, knowing that he had not pursued the threat to evict, reasonably may have been lulled into treating the articulated c. 93A claim lightly since no injury to the plaintiff's property or pocketbook, attributable to the notices, was apparent, and, therefore, no award of significant penalty damages or attorney's fees was likely. Consequently, he had little reason to tender an offer of settlement with his answer. Moreover, while pretrial discovery and the plaintiff's evidence may have supported a theory of an unlawful "larger plan" on the part of the defendant, that information and proof was also consistent with the claims of lease violation

---

the injury actually suffered by the petitioner, then the court shall not award more than single damages."

[5]Compare § 9, as inserted by St. 1969, c. 690, which requires that a claimant make a written demand for relief at least thirty days prior to the filing of an action, "reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered . . . ." See *Nader* v. *Citron,* 372 Mass. 96, 100-101 (1977). Such a letter must be specific. See *Cassano* v. *Gogos,* 20 Mass. App. Ct. 348 (1985).

[6]The plaintiff indulges in an unacceptably strained reading of his amended complaint by arguing that a prefatory and routine incorporation by reference of the background and damage paragraphs of his contract and tort counts, repeated from his original complaint, served to notify the defendant that the c. 93A count encompassed more than the retaliatory threats of eviction. An attempt by the plaintiff to claim notice of a broader attack based on an answer to an interrogatory which similarly incorporates the entire complaint and contains a single ambiguous reference to the defendant's refusal to consent to a lease assignment also falls well short of establishing full and fair identification of a totality of conduct theory.

and unlawful interference and, therefore, was unlikely to alert a reasonable defendant to the presence of a broader c. 93A attack than that specified in the complaint. The defendant's failure to object to such otherwise relevant evidence does not support a concept of implied consent to a totality of conduct claim under c. 93A. See *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 814-815 (1988). It would be fundamentally unfair, in the circumstances, to impose upon the defendant a result which was not foretold by the pleadings or the trial.[7] See *Messina v. Scheft*, 20 Mass. App. Ct. 945, 946 (1985); *Harrington-McGill v. Old Mother Hubbard Dog Food Co.*, 22 Mass. App. Ct. 966, 968 (1986). Consequently, the award of double damages and attorney's fees must be vacated.

While the judge could well find that the retaliatory actions of the defendant constituted a violation of G. L. c. 93A, § 2, there is no need to remand the case for further findings in view of the absence of evidence required by G. L. c. 93A, § 11, that the plaintiff suffered "any loss of money or property." The plaintiff was never evicted from the leased premises. The only evidence of any effect caused by the defendant's default and eviction notices was that the plaintiff engaged in an investigation of the charges made and drafted and mailed two letters in response to them. In *Baldassari v. Public Fin. Trust*, 369 Mass. 33 (1975), the Supreme Judicial Court, strictly interpreting a similar "loss of money or property" requirement in § 9,[8] stated that " 'money' means

---

[7] The record discloses no attempt by the plaintiff to further amend his complaint to conform to the evidence of a broader c. 93A theory than originally pleaded. Compare *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 763 (1986). If such an amendment was not determined to be unfairly tardy, see *BBF, Inc. v. Germanium Power Devices Corp.*, 13 Mass. App. Ct. 166, 178 (1982), the defendant would have had an opportunity to amend his answer, Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974), and tender a damage-limiting offer of settlement.

[8] By St. 1979, c. 406, § 1, the Legislature, apparently in reaction to the holding in *Baldassari*, see *Leardi v. Brown*, 394 Mass. 151, 158 (1985), deleted the "loss of money or property" requirement in § 9 and replaced it with a much broader "[a]ny person . . . who has been injured" provision. See *Haddad v. Gonzalez*, 410 Mass. 855, 864-865 (1991).

money, not time, and that 'property' means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty." *Id.* at 45. This court has utilized the *Baldassari* definition in § 11 cases. See *Levy* v. *Bendetson*, 6 Mass. App. Ct. 558, 566-567 (1978); *Homsi* v. *C. H. Babb Co.*, 10 Mass. App. Ct. 474, 480-481 (1980); *Bump* v. *Robbins*, 24 Mass. App. Ct. 296, 312 (1987). Focusing on the attorneys' fees provision of § 11, the court in *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 718 (1989), stated: "Under § 11, a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorney's fees. . . . A plaintiff suing under § 11, however, cannot recover attorneys' fees for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some adverse effect upon the plaintiff, even if it is not quantifiable in dollars."

Notwithstanding that the defendant's retaliatory tactics may have constituted a violation of G. L. c. 93A, § 2, the plaintiff has not shown any entitlement to relief under § 11. He brought no proof of loss of money or property, as those terms are defined in *Baldassari*, before the court. The most that the judge could determine, on remand, is that the plaintiff expended some of his own time in reaction to the threat of eviction. Since the conduct complained of and found wanting in *Baldassari* included "threats of legal actions never subsequently commenced" which caused emotional distress and a loss of time to the plaintiff, *Baldassari* v. *Public Fin. Trust*, 369 Mass. at 35, 45, the plaintiff's similar loss must be construed as something less than the "adverse effect" contemplated by *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. at 718.[9] We acknowledge, as did the

---

[9]One commentator concludes that "[w]hat will suffice under *Jet Line*, as a minimal showing of 'some adverse effect,' is not clear" and expresses difficulty at reconciling the reference to an adverse effect " 'not quantifiable in dollars'. . . with section 11's requirement of a 'loss of money or property.' " Billings, The Massachusetts Law of Unfair Insurance Claim Settlement Practices, 76 Mass.L.Rev. 55, 74-75 (1991). That reference may well be an indication that nominal property damage or financial loss

court in *Baldassari*, that such narrow interpretation of the words "loss of money or property" is "not entirely satisfactory." See *Haddad* v. *Gonzalez*, 410 Mass. 855, 864 (1991), citing *Baldassari* v. *Public Fin. Trust*, *supra* at 44-46. As was demonstrated with respect to § 9, however, an appropriate expansion of available remedies readily can be accomplished by the Legislature.

2. *The contract, tort, and rent claims.* We reject the contention that the judge applied an erroneous standard in ruling that the defendant unreasonably withheld his consent to an assignment of the lease. The judge's findings reflect that he properly and carefully took into account the lease's use restrictions in determining whether the defendant violated the provision that his written consent to an assignment would "not be unreasonably withheld or delayed." He appropriately tested the defendant's conduct against the "usual standards of reasonableness," *Nassif* v. *Boston & Me. R.R.*, 340 Mass. 557, 565 (1960), correctly considered objective factors relating to the defendant's interest in the property and the lease, *Worcester-Tatnuck Square CVS, Inc.* v. *Kaplan*, 33 Mass. App. Ct. 499, 503-504 (1992), and interpreted the consent clause in the light of the other lease provisions, *Mutual Paper Co.* v. *Hoague-Sprague Corp.*, 297 Mass. 294, 301 (1937).

---

may serve as a fulcrum for the award of attorneys' fees. See *Raymer* v. *Bay State Natl. Bank*, 384 Mass. 310, 319-320 (1981) (attorney's fees under c. 93A, § 11, allowed upon proof of nominal damages in suit brought under G. L. c. 106 and G. L. c. 93A); *Martha's Vineyard Auto Village, Inc.* v. *Newman*, 30 Mass. App. Ct. 363, 369 (1991) (the distinction between "actual but not clearly measurable damage or loss, contrasted with no actual damage or loss . . . is important in considering the . . . award of attorneys' fees . . ."). We note also that the language in question was used in limiting this court's holding in *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648 (1985), to cases in which "the plaintiff appeared to have lost the use of money but offered no proof of the dollar amount of that loss." *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. at 718. Such interpretations are faithful to the statutory requirement of proof of substantive "loss of money or property" while at the same time recognizing that G. L. c. 93A "was designed to meet a pressing need for an effective private remedy . . . ." *Baldassari* v. *Public Fin. Trust*, 369 Mass. at 40-41.

The judge properly articulated and applied the correct legal standard for the tort of interference with an advantageous relationship. *Comey* v. *Hill*, 387 Mass. 11, 19 (1982), and authorities cited. His findings that the defendant's "adamant and intentional conduct" in refusing to consent to an assignment "transcended a mere breach of contract," "was wrongful and without justification and therefore malicious,"[10] and was part of a plan to undermine the plaintiff's efforts to sell his restaurant fulfilled the requirements of that standard and were not clearly erroneous.

Given the defendant's unreasonable withholding of consent to an assignment of the lease, the plaintiff was relieved of his obligations to pay rent thereafter. *Adams, Harkness & Hill, Inc.* v. *Northeast Realty Corp.*, 361 Mass. 552, 557 (1972). *Wasserman* v. *Agnastopoulos*, 22 Mass. App. Ct. 672, 681 (1986). We, therefore, affirm the judgment for the plaintiff on the defendant's counterclaim for unpaid rent.

3. *Damages.* In his "Rulings of Law" on the count for unlawful interference, the judge awarded damages to the plaintiff in the amount of $10,000 for emotional distress. His decision contains no discussion or findings concerning the nature of the distress, the conduct which caused it, see *Agis* v. *Howard Johnson Co.*, 371 Mass. 140, 144-145 (1976), or the basis upon which he concluded that the plaintiff had carried "the difficult burden of proof applicable to all intentional infliction of emotional distress claims." *Haddad* v. *Gonzalez*, 410 Mass. at 869. The plaintiff's damages, therefore, must be reduced by the $10,000 awarded for emotional distress.

---

[10]The decision in *United Truck Leasing Corp.* v. *Geltman*, 406 Mass. 811, 816 (1990), issued after the trial in the present case, does not require a result different from the judge's conclusion. That decision adopts the language of Restatement (Second) of Torts § 766 (1977), which uses the term "improper" as the standard of conduct for this tort, eliminating the case law standard of "malicious." In the circumstances of the present case, we perceive no significant difference between the judge's analysis that the defendant's conduct was malicious and the relevant definition of improper: conduct which is wrongful beyond the fact of interference itself, and which may arise from improper motives or from the use of improper means. See *United Truck Leasing Corp.* v. *Geltman, supra* at 816. See also *Schinkel* v. *Maxi-Holding, Inc.*, 30 Mass. App. Ct. 41, 50-51 (1991).

The damages awarded for loss of profits ($379,322) are supported in the record by the testimony of an accountant who was called by the plaintiff. While it is arguable that his computation of loss of profits was puzzling, we cannot state that the judge's acceptance of his uncontradicted testimony involved an abuse of discretion. *Bartley* v. *Phillips*, 317 Mass. 35, 43 (1944). *Homsi* v. *C. H. Babb Co.*, 10 Mass. App. Ct. at 476.

4. *Disposition.* We affirm the judgment for the plaintiff on the defendant's counterclaim and so much of the judgment as awards to the plaintiff damages in the amount of $379,322 on Counts II and III and vacate the award of double damages and attorney's fees pursuant to G. L. c. 93A and the award of damages for emotional distress. We remand the case to the Superior Court for the entry of judgment in accordance with this opinion, together with statutory interest and costs. The request for fees and costs of appeal is denied.

*So ordered.*