Botsford, Margot, J.
The plaintiff DSF Investors, LLC (DSF) moved for summary judgment on all claims in this case, including all counts of the counterclaim filed by Lyme Timber Company (Lyme). In a decision dated December 21, 2004, I granted summary judgment on these claims, except for Count VI of the counterclaim against DSF and Count VI of the third-parly claim against Arthur P. Solomon, both of which allege unfair or deceptive conduct under G.L.c. 93A, §§2 and ll.[2] I requested the parties to give further consideration to the question of damages on the Chapter 93A claims. They have now done so, filing a new set of opposing memoranda, and presenting oral argument on the question. For reasons summarized *410 below, I conclude in the circumstances of this case, reliance damages are the appropriate measure of damages, not benefit of the bargain damages represented by lost profits.

Discussion

Lyme’s Chapter 93A claim alleges that beginning in the spring and summer of 2001, DSF and Solomon committed unfair or deceptive acts in falsely representing to Lyme that DSF was going forward with Lyme as a partner or joint venturer in the development of the Neceo Building in Cambridge, Massachusetts. Lyme charges that these representations were false when made because DSF never intended to enter into a binding joint venture agreement with Lyme, and indeed knew that it could not do so because of a prior, conflicting agreement and related commitments between DSF and Tribeca Associates, LLC (Tribeca). Lyme argues that DSF’s and Solomon’s representations to it were made in order to induce Lyme to offer valuable development advice in a number of spheres concerning the Neceo Building as a biomedical facility, and also not to oppose DSF’s application for a necessary permit from the City of Cambridge Planning Board. Considered in a light most favorable to Lyme, the summary judgment record indicates that Lyme provided what it characterizes in its papers as “necessary and invaluable biotech expertise” to DSF during the spring and summer of 2001.
There is no question that where fraud or deceit (i.e., intentional misrepresentation) is proved, benefit of the bargain damages should be awarded — at least where such damages can be proved with reasonable certainty. See, e.g., GTE Products Corp. v. Broadway Elect Supply Co., Inc., 42 Mass.App.Ct. 293, 296 (1997), citing Rice v. Price, 340 Mass. 502, 507 (1960). When a Chapter 93A claim is included in a case where common-law deceit has been established, benefit of the bargain damages on the Chapter 93A count are also appropriate, even if the damages found by the jury on the deceit claim have been less. See, e.g., Chamberlayne School & Chamberlayne Jr. College v. Banker, 30 Mass.App.Ct. 346, 353-55 (1991). See also GTE Products Corp., supra, 30 Mass.App.Ct. at 295-98 (1997); Sargent v. Koulisas, 29 Mass.App.Ct. 956, 958 (1990). The difference between these cases and the present case, however, is that summary judgment has been awarded to DSF on Lyme’s claims of intentional misrepresentation, because I have concluded that Lyme will be unable to prove that its reliance on the claimed misrepresentations was reasonable.[3] Whatever Lyme may assert about “fraud ab initio” in relation to its Chapter 93A claim, it is undisputed that on August 21, 2001, well after Solomon is claimed to have commenced his allegedly fraudulent representations about DSF’s intention to partner with Lyme on the Neceo Building development project, Lyme signed the parties’ term sheet dated August 14, 2001, which expressly stated that there would be no binding agreement between Lyme and DSF to develop the Neceo Building unless and until both sides executed a written agreement to do so.[4]
It is true that reliance is not an element of a claim based on deceptive practices under Chapter 93A. See, e.g., International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 850 (1983). However, under G.L.c. 93A, §11, Lyme must show that it suffered a “loss of money or property” and that “a causal connection [exists] between the deception and the loss . . .” International Fidelity Ins. Co., 387 Mass. at 850. See Hartford Cas. Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 125 (1994). Lyme argues it should be entitled to recover its lost profits from the allegedly promised relationship with DSF, and seems to claim it should be able to recover a significant share of the total profits from the Neceo Building project without investing any money itself. However, in light of: (1) the specific disavowal by both DSF and Lyme of an intent to be bound together without a written agreement, spelled out in Section 11 of the parties’ August 14, 2001, term sheet; (2) the months of negotiations over a final written agreement that the parties undertook thereafter, efforts that ultimately failed to bring a mutually acceptable written agreement into being; and (3) the fact that Lyme never invested any money at all in the Neceo Building project,[5] the only loss that appears causally connected to the alleged deception in this case is the value of the consulting services and advice proffered by Lyme — in other words, reliance damages.
There is a separate reason to confine Chapter 93A damages to reliance damages. Despite Lyme’s contention to the contrary, at the heart of this case are failed contract negotiations between DSF and Lyme. Regardless of who was at fault for the failure, an award of benefit of the bargain damages — i.e., the anticipated lost profits — is discouraged in such a situation because such damages are both difficult to ascertain and, perhaps more importantly, may be disproportionate to the loss incurred. See Schwanbeck v. FederalMogul Corp., 31 Mass.App.Ct. 390, 416 (1991), S.C., 412 Mass. 703 (1992). See also Restatement (Second) of Contracts, §351(3) and comment f (1981). While Chapter 93A is a broad statute in which remedies are not tied to traditional contract or tort damages, damages nonetheless must be premised on actual loss. Where Lyme’s contribution to the Neceo Building project was limited to consulting services and advice in the beginning stages of the project,[6] included no capital investment, and there is no record of evidence suggesting that Lyme gave up or did not pursue other available investment opportunities in reliance on its prospective deal with DSF, an award of lost profits would be highly disproportionate to the loss incurred.[7]
In sum, I conclude that Lyme should be limited to the recovery of reliance damages for its claim that DSF and Solomon violated G.L.c. 93A, §11, and may not seek recovery of lost profits or some other form of *411 benefit of the bargain damages. Lyme, however, through its counsel, has indicated that it does not wish to pursue reliance damages. Accordingly, in the circumstances of this case, Lyme will not be able to prove a loss of money or property resulting from DSF’s and Solomon’s alleged unfair or deceptive conduct. See, e.g., Halper v. Demeter, 34 Mass.App.Ct. 299, 304-05 (1993). See also Doering Equipment Co. v. John Deere Co., 61 Mass.App.Ct. 850, 858 (2004). Given this, summary judgment in favor of DSF and Solomon on Lyme’s Chapter 93A claims is appropriate.

ORDER

For the foregoing reasons, and in particular based on the conclusion that the defendants are not entitled to seek benefit of the bargain damages for their claim under Chapter 93A, and do not intend to present evidence of any other form of damages, the motion for summary judgment of the plaintiff and third-party defendant on Count VI of the defendants’ counterclaim and Count VI of the third-party complaint is allowed.
A final judgment is to enter in this case. With respect to the complaint, the judgment is to declare that the plaintiff DSF Investors, Inc. (DSF) and the defendants Lyme Timber Company, Woodland Management Associates, LLC and Lyme/NC, LLC never entered into a binding written agreement with respect to the development of the Neceo Building, and the term sheet dated August 14, 2001, between these parties is not such an agreement. With respect to the counterclaims, judgment is to enter in favor of DSF, the defendant in counterclaim on Counts I through VI, and all such counts of the counterclaim are to be dismissed. With respect to the third-party complaint against Arthur P. Solomon, judgment is to enter in favor of the third-party defendant Solomon on Counts I through VI, and all such counts of the third-party complaint are to be dismissed.

Memorandum of Decision and Order on Plaintiffs and Third-Party Defendant’s Motion for Summary Judgment on All Counts of the Complaint, Counterclaim and Third-Party Complaint.

Lyme’s claim of promissory estoppel was subject to summary judgment in part for the same reason, that is, an absence of reasonable reliance as a matter of law.

Lyme’s reliance on cases such as Bates v. Southgate, 308 Mass. 170,182 (1941), is misplaced. The term sheet expressly states it is not a binding final agreement and that more needs to be done before a binding agreement would exist between the parties. Lyme cannot argue that despite this explicit language in the agreement itself, it is entitled to enforce an alleged contrary oral expression of intent that Solomon and DSF allegedly first gave before the term sheet was signed. See Kuwaiti Danish Computer Co. v. Digital Equipment Corp., 438 Mass. 459, 468 (2003). Moreover, the summary judgment record indicates that Lyme’s David Roby testified on deposition that he understood the term sheet meant there was no binding agreement between DSF and Lyme until a final written agreement was executed, and that this correctly reflected his intent in going forward with Solomon and DSF at the time.

I note that the DSF projection of profits that DSF provided to Lyme in July of 2001, on which Lyme purportedly relied for its claim to profits, was premised on a $15 million investment by Lyme. No such investment, or indeed investment in any amount, has ever been made.

Lyme argues that in addition to the contribution of its expertise, it declined to oppose DSF’s application for an “Article 19 permit” from the Cambridge Planning Board. A decision by Lyme not to raise objections to a permit that DSF was entitled to seek from a public board does not seem to be an appropriate subject of damages, particularly where Lyme has not even attempted to show that it had any legitimate objections to raise to DSF’s application.

The case of Aspinwall v. Philip Morris Companies, Inc., 442 Mass. 381 (2004), on which Lyme relies, presents a different situation. The court there considered whether purchasers of Marlboro Light cigarettes, who claimed that the manufacturers engaged in unfair and deceptive marketing practices in the sale of the cigarettes, would be able to claim benefit of the bargain damages — the difference between the price paid for packs of the “misrepresented” cigarettes and their actual value. The court concluded that this was an appropriate measure of damages, if it could be proved with reasonable certainty. 442 Mass, at 399-400. In Aspinwall, however, the class of plaintiffs had actually bought the Marlboro Light cigarettes, so that there was a completed purchase and sale transaction between each plaintiff and the cigarette sellers. Here, the parties never agreed on the terms of their proposed relationship, and thus there was no completed contract or other transaction.