Smith, Herman, JR., J.

INTRODUCTION

After a juiy trial on the plaintiffs, Eastern Building Services Corp., breach of contract, conversion, and violation of G.L.c. 93A claims and on the defendant’s, Matzell, Richard & Watts, Inc., quantum meruit counterclaim, the jury returned verdicts for the plaintiff on each of its three claims. However, the jury’s verdict, finding the defendant willfully and knowingly violated G.L.c. 93A, is advisory only. After consideration of the parties’ proposed rulings of law and findings of fact, the trial testimony, the documentary evidence presented at trial, and the reasonable inferences which may be drawn from the evidence, this Court finds that the defendant did not engage in any unfair or deceptive acts with respect to the breach of contract and the conversion claims. However, the Court does find that the defendant committed an unfair and deceptive act in violation of G.L.c. 93A when it attempted to wrongfully interfere with the plaintiffs business relations with Galaxy Internet Services, the plaintiffs website host provider. Further, the Court finds that the violation was willful and knowing. However, because the plaintiff has failed to prove its c. 93A damages, the Court shall render judgment in favor of the defendant. The Court makes the following findings and rulings.

FINDINGS OF FACTS

The plaintiff, Eastern Building Services Corp. (“EBS”), is a domestic profit corporation organized in Massachusetts on September 1, 1982 with a principal place of business at 900 Chelmsford Street, Lowell, MA. The defendant, Matzell, Richard & Watts, Inc. (“MRWj, is a domestic profit corporation, formed in Massachusetts on February 1, 1983 with its offices located at 195 State Street, Boston, MA.
In January of 2002, EBS, through its president, Gabriel Zizza (“Zizza”), set out to hire a new advertising agency. In furtherance of his desire to hire a new advertising agency for EBS, Zizza sought and received a recommendation from his photographer for three advertising agencies. The defendant, MRW, was one of the three advertising agencies recommended to Zizza by his photographer. After interviewing each agency, Zizza chose to hire MRW, the largest of the three competitors and more expensive, to assist in providing advertising and marketing services to EBS in the promotion of its cleaning business.
During product and services presentations and conferences, MRW presented, predominately by MRWs employee and agent, Chuck Booth, various projects to EBS as estimates under multiple job names/titles. For example, MRW, gave Zizza a document, called an Agency Profile. (Trial Exhibit #1.) The Agency Profile described the make up of MRW, its business relationships, and scope of its services. Specifically, the Agency Profile indicated that MRW had 16 employees, that it served 10 full service clients and 10 project-based clients and that its billings range was $50,000 to $5,000,000. It also listed the scope of *726 services, described a service known as “ClientVue,” set forth hourly rates for both Retainer Based services and Project Based services, provided a brief statement about the principals and contained a list of current clients.
In addition, MRW provided Zizza with a “Proposal” (Trial Exhibit #2) that set forth the Steps and Deliver-ables which consisted of the Design Phase, the Production Phase and the Media Phase. Each of the above Steps and Deliverables were divided into components, each of which provided a brief description, timeline and a budget. Following the above-described Design Phase, Production Phase and Media Phase, the Proposal then set forth Logistics with respect to the anticipated business arrangement and References. The Proposal concluded with a summary of the three phases described therein, a description of the General Terms and Conditions and a description of the Agency Policy on Electronic File Ownership And Electronic File Duplication. The summary of the three phases of the Proposal contained a total budget range of $89,000.00 - $127,500.00, plus the cost of media placement, illustration, photography, printing, lists, postage, mailhouse, etc.
Following the Proposal referred to above, but prior to hiring MRW, MRW sent Zizza a letter dated January 25, 2002, which contained an explanation of Account Management billing. (Trial Exhibit #3.) In particular, it drew attention to the difference between Account Management expenses and the additional expenses associated with Deliverables, which were described in the Proposal. The letter specifically informed Zizza that Account Management was an expense in addition to the expenses set forth in the Proposal. Despite having the Proposal in his possession prior to the commencement of the business relationship between MRW and EBS, Zizza never signed and returned the Proposal and MRW never insisted on receiving the signed Proposal prior to the commencement of its performance.
On or about February 1, 2002, Zizza informed MRW of his decision to hire them as his new advertising agency and of his decision to go with the Retainer Based billing option as opposed to the Project Based billing option. The Retainer Based billing was to run from February 1, 2002 through July 2002, at which time the parties agreed that the retainer would be adjusted up or down after a review of the day to day account work status. Between February 2002 and August 2002 EBS made 6 payments of $4,375.00 for Account Management for a total payment of $26,250.00. In addition, during the course of the business relationship, EBS paid an additional $52,012.50 for Deliverables as opposed to Account Management. (Trial Exhibit #5.) The first payment for Deliverables was made on February 9, 2002 and the last payment for Deliverables was made on September 26, 2002. Thus, EBS’s total payments to MRW through October 2002 was $78,262.50.
For the months of September through December 2002, MRW mistakenly billed EBS for services under the Retainer Based billing option. But MRW immediately corrected this error as soon as it was made aware of it by waiving all Account Management Retainer bills after the first six payments that were made in 2002.
Although MRW waived all the outstanding Account Management Retainer bills, the parties could not agree on a resolution of certain Deliverables bills that MRW claimed were unpaid. During discussions in February or March of 2003, MRW, through James Watts indicated that EBS agreed to pay the remaining bills for Deliverables at that time. No payment was ever made by EBS and MRW made several more demands for payment. The trial evidence demonstrated through witness testimony and 5 separate invoices offered in evidence that the MRW sought payment for $30,445.00 from EBS. The bills were based on written estimates that MRW submitted to EBS after February of 2002 and which Zizza signed. The amount of the bills matched or were lower than the amounts stated in the estimates. At trial, EBS, through Zizza, disputed owing any of the $30,445.00. This dispute raised a credibility issue for the jury to resolve. Given, the jury’s verdict, it resolved the dispute in favor of EBS by rejecting MRWs quantum meruit counterclaim.
After the February or March 2003 discussions, the parties retained counsel. MRW was unsatisfied with EBS’s approach to the unpaid invoices and pursued a course of action that involved, on or about April 11, 2003, writing to Galaxy Internet Services (“Galaxy”), the company that hosted the website for the plaintiff, and requesting that Galaxy remove EBS’s website immediately and return all data to MRW. In addition, on or about April 11, 2003, MRW contacted, both orally and in writing, the New England Real Estate Journal, requesting that it remove EBS’s advertising and return all data to MRW. EBS immediately retained counsel to see to it that neither Galaxy nor the New England Real Estate Journal complied with MRWs demands. Neither did. However, EBS did expend legal fees in responding to MRWs attempts to interfere with EBS’s advantageous business relationships. However, EBS did not submit into evidence the actual amount it spent on these legal fees.
MRW has a written policy on Electronic File Ownership and Electronic File Duplication that states, “MRW will release electronic Jiles to client companies for any project, or part thereof, that does not involve usage limitations or other contractual restrictions.” MRW has in its possession electronic data that it created in the course of producing product and services for EBS. When the business relationship between the two ended, EBS demanded that MRW give it all the electronic data for which EBS paid but MRW refused. MRW kept the images because it reasonably believed that the images were not the property of EBS.

*727
RULINGS OF LAW

Massachusetts Laws Chapter 93A declares unlawful “unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, §2. To establish an unfair or deceptive practice under Massachusetts law, EBS must show that the actions of MRW fell within at least some concept of unfairness; or were immoral, unethical, oppressive, or unscrupulous and resulted in substantial injuiy to other business people. See Linkage Corp. v. Trustees of Boston University, 425 Mass. 1, 25, cert. denied sub nom, 522 U.S. 1015 (1997), quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975). ‘Whether a given practice runs afoul of these touchstones must be determined from the circumstances of each case. The objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.” Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 502, 504 (1979) (citations omitted). However, our courts have also recognized that c. 93A, §11 does not require that claims brought by savvy business people reach the “antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness.” VMark Software, Inc. v. EMC Corporation, 37 Mass.App.Ct. 610, 620 (1994), citing Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 502, 504 (1979).
MRWs conduct may be considered “deceptive” if it could reasonably be found to have caused EBS to act differently from the way it would have otherwise acted. Tagliente v. Himmer, 949 F.2d 1 (1st Cir. 1991); Kazmaier v. Wooten, 761 F.2d 46 (1st. Cir. 1985); Hogan v. Riemer, 35 Mass.App.Ct. 360, 619 N.E.2d. 984 (1993). Moreover, conduct in disregard of known contractual arrangements and intended to secure benefits for the breaching party constitutes an unfair act or practice in violation of G.L.c. 93 (A). Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 583 N.E.2d 806, 820 (1991).
Representations or conduct can be unfair and deceptive and in violation of G.L.c. 93A if they are shown to induce a course of conduct on the person to whom the representation is made and an act or omission resulting from the representation and detriment to such a person as a consequence of said act or omission. See Greenstein v. Flatley, 19 Mass.App.Ct. 351, 474 N.E.2d 1130, 1131 (1985).
Since a mere breach of contract, alone, does not constitute unfair and deceptive actions, see Trent Partners and Associates, Inc. v. Digital Equipment Corp., 120 F.Sup.2d 84, 106 (D.Mass. 1999) (“it is well settled that a simple breach of contract is never enough, by itself, to constitute a violation of Chapter 93A”), this Court finds that MRW did not violate c. 93A when it breached any of its contracts with EBS. With respect to MRWs not returning the electronic and other images that EBS believes it owns, again, MRW has not violated c. 93A. MRW kept the images because it reasonably believed that the images were not the property of EBS. At worst, MRW merely breached its contract with EBS. Again, this Court finds that MRWs actions did not rise to the level of rascality inherent in unfair and deceptive actions that are found to violate c. 93A.
However, the Court does find that MRWs attempting to interfere with EBS’ advantageous business relationships with Galaxy[2], and the New England Real Estate Journal[3] did constitute unfair business practices under c. 93A. Although MRW failed in its attempt to interfere with EBS’s advantageous business relationships, EBS claimed that it expended legal fees in responding to MRWs attempts. To recover damages or attorneys fees under c. 93A, §11, a plaintiff must show that he has suffered a “loss of money or property, real or personal.”[4] “ ‘Money’ means money, not time, and . . . ‘property’ means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty.” Baldassari v. Public Fin. Trust 369 Mass. 33, 45, 337 N.E.2d 701 (1975). “If a violation of G.L.c. 93A, §11, forces another to incur attorneys fees, those fees are a loss of money or property and maybe recovered as G.L.c. 93A damages.” Columbia Chiropractic Group, Inc. v. Trust Ins. Co., 430 Mass. 60, 63 (1999). See also Siegel v. Berkshire Life Ins. Co., 64 Mass.App.Ct. 698, 703 (2005) (“Ifac. 93A violation forces someone to incur legal fees and expenses that are not simply those incurred in vindicating that person’s rights under the statute, those fees may be treated as actual damages [under c. 93A, §9] in the same way as other losses of money or property.”).
After a review of all the exhibits, this Court finds that the plaintiff incurred $26,136.50 in attorneys fees and $684.90 in costs in vindicating its rights under c. 93A. This Court finds that MRWs actions against EBS with respect to its business relationships was willful and knowing. MRW attempted to interfere with EBS’s business relationships with Galaxy and the New England Real Estate Journal in order to force EBS to pay the balance of the Deliverables Invoices, totaling $30,445.00. Had MRW succeeded, it is likely that EBS would have suffered a reduction of sales of its cleaning services and would have incurred extra costs in finding replacement businesses. Because this Court finds that MRWs actions against EBS were willful and knowing violations of G.L.c. 93A, this Court shall award double damages in the amount of $53,682.80.

AMENDED ORDER

1. The Court finds that defendants, Matzell Richard & Watts, Inc. did not violate G.L.c. 93A with respect to the breach of contract and conversion counts in plaintiff Eastern Building Services Corp.’s Complaint.
2. The Court finds that defendant Matzell, Richard & Watts, Inc. did willfully and knowingly violate c. 93A when it attempted to interfere with plaintiff Eastern Building Services Corp.’s business relationships, and accordingly plaintiff Eastern Building Services Corp. shall be awarded *728 c. 93A damages in the amount of $26,841.40 doubled to $53,682.80 plus costs and attorneys fees.
3. The trustee process is dismissed.

See Trial Exhibits 7 and 13.

See Trial Exhibits 8 and 14

General Laws c. 93A, §11, provides: “Any person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by section two . . . may, as hereinafter provided, bring an action in the superior court. . .”