## Dawn Richards[1] vs. Arteva Specialties S.A.R.L.[2] & others.[3]

No. 05-P-471.

Essex. February 17, 2006. - July 14, 2006.

Present: Laurence, Duffly, & Mills, JJ.

*Consumer Protection Act,* Demand letter.

Discussion of the standards governing an appellate court's review of the allowance of a motion to dismiss pursuant to Mass.R.Civ.P 12(b)(6). [730]

Discussion of the requirement, in an action pursuant to G. L. c. 93A, § 9, that the plaintiff serve on the defendant a demand letter, reasonably describing the claimant's grievances, where the plaintiff purports to represent a class of similarly situated persons that has not yet been certified. [731-733]

The judge in a civil action erred in dismissing the complaint on the ground that the plaintiff's G. L. c. 93A demand letter, purportedly sent on behalf of herself and a class of Massachusetts indirect purchasers who alleged injury as a result of the defendants' illegal price-fixing, failed as a matter of law to describe the alleged injury adequately, where the letter described the injury in sufficient detail to permit the defendants reasonably (if only roughly) to ascertain their exposure, at least to the individual plaintiff; where the plaintiff was not required to identify a specific dollar figure of damages; and where the plaintiff identified the causal relationship between the defendants' alleged conduct and the products the plaintiff claimed to have purchased. [733-738]

Where the judge in a civil action did not act on a defendant's motion to dismiss the complaint for lack of personal jurisdiction, this court declined to reach the issue, even though the parties had fully briefed it, because the trial court was the more appropriate forum in the first instance to marshal the pertinent facts and apply the fact-dependent jurisdictional standards under the long-arm statute, G. L. c. 223A, § 3. [738-739]

Civil action commenced in the Superior Court Department on April 8, 2004.

[1]The plaintiff brings this action both individually and "on behalf of . . . all others similarly situated."

[2]Doing business as KoSa.

[3]E.I. DuPont de Nemours & Company; DAK Fibers, LLC; Nan Ya Plastics Corporation, America; and Wellman, Inc.

Motions to dismiss were heard by *Patrick J. Riley*, J.

*Douglas M. Brooks* for the plaintiff.

*Steven M. Cowley* for Wellman, Inc., & others.

*Edward J. Naughton*, for Nan Ya Plastics Corporation, America, was present but did not argue.

LAURENCE, J. The principal question presented by this appeal is whether the plaintiff's G. L. c. 93A demand letter, purportedly sent on behalf of herself and a class of Massachusetts indirect purchasers who alleged injury as a result of the defendants' illegal price-fixing, "reasonably describ[ed] . . . the injury suffered," as required by G. L. c. 93A, § 9(3), inserted by St. 1969, c. 690. A Superior Court judge held the demand letter to be defective as matter of law for its failure to describe the alleged injury adequately and dismissed the complaint on the defendants' motions under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). Because we conclude that the demand letter was minimally sufficient to meet the statutory requirement on the individual plaintiff's own behalf prior to any class action being certified, we reverse.

*Factual background.* The defendants, manufacturers of a material called polyester staple,[4] allegedly conspired over at least a two-year period to fix prices, eliminate competition among them, and allocate customers and markets for polyester staple used in consumer goods sold in and distributed to Massachusetts and other States.[5] At least one defendant has pleaded

---

[4]Polyester staple is a synthetic, petroleum-based fiber incorporated in many household goods, including carpets, rugs, curtains, draperies, sheets, pillows, pillowcases, wall coverings, tablecloths, bedspreads, comforters, sofas, chairs, mattresses, suits, shirts, pants, coats, jackets, parkas, sweaters, and sleeping bags. The defendants themselves manufacture no consumer products.

Polyester staple, a fungible commodity, is purchased primarily on the basis of price. In order to operate economically, the manufacturers of polyester staple must utilize a capital-intensive, large-scale production process, a process used by essentially all manufacturers of polyester staple. The significant start-up costs and large-scale production requirements mean that there are high barriers to entry to manufacturing polyester staple. During the class period at issue here, the defendants' aggregate polyester staple market share in the United States was, allegedly, about eighty-five to ninety percent.

[5]The conspiracy occurred between on April, 1999, and July, 2001. During this two-year period, the defendants implemented four successive, uniform polyester-staple price increases: in August, 1999, ten to fifteen percent; in

guilty to the charge of violation of the Sherman Antitrust Act (15 U.S.C. § 1 [2000]), and another has admitted to participating in the conspiracy.[6]

The plaintiff, Dawn Richards, brought the instant complaint on April 8, 2004, pursuant to G. L. c. 93A, §§ 2 and 9. She alleged that she represented a class of "millions" of Massachusetts "indirect purchaser[s]," consumers who purchased products containing polyester staple while the defendants' conspiracy was ongoing. She and the putative class members (the supposed class not yet having been certified) were indirect purchasers because they purchased the products at retail from third parties, not directly from the defendants. The plaintiff and the class were assertedly damaged (in an amount yet undetermined) because the products they purchased containing polyester staple were sold at artificially inflated prices as a result of the defendants' price-fixing conspiracy and other anticompetitive conduct.

Prior to filing the complaint, the plaintiff's counsel served on each of the defendants a letter entitled "Demand for Relief Pursuant to [G. L. c.] 93A, § 9." Under a heading captioned "CLAIMANT," the letter described the plaintiff and the class she proposed to represent and stated that the plaintiff personally "has purchased and paid illegally inflated prices on products containing polyester staple such as, but not limited to[,] shirts and other wearing apparel, linens and home furnishings." Under

---

November, 1999, ten to fifteen percent; in February, 2000, ten to fifteen percent; and in April, 2000, five to twelve percent.

[6]On October 31, 2002, defendant Arteva Specialties S.A.R.L., or KoSa (see note 2, *supra*), pleaded guilty to the criminal charge of participating in a conspiracy to suppress and eliminate competition by fixing prices and allocating customers for polyester staple and agreed to pay a $28.5 million criminal fine. KoSa also paid a criminal fine after pleading guilty to price-fixing in violation of the Canadian Competition Act. In a statement of admissions executed by KoSa pursuant to the Canadian criminal code, KoSa implicated employees at DAK Fibers, LLC; Wellman, Inc.; and Nan Ya Plastics Corporation, America (Nan Ya), as participating in the conspiracy. Additionally, as a result of an investigation by the United States Department of Justice, defendant E.I. DuPont de Nemours & Company (DuPont) admitted to participating in the conspiracy and was granted amnesty from criminal charges under the Federal corporate leniency program. The former sales manager of Nan Ya was indicted for engaging in a conspiracy to fix prices and restrain competition in the sale of polyester staple but was acquitted.

"UNFAIR OR DECEPTIVE ACTS OR PRACTICES," the letter described the defendants' alleged unlawful practices regarding the pricing of polyester staple and the purported effects of that unlawful conduct. The letter described the "INJURIES SUFFERED" as follows:

> "Claimant, as well as the other members of the proposed Class, *have suffered injury and damages as a result of the Respondent's unfair or deceptive acts or practices in the form of higher out-of-pocket costs to purchase products containing polyester staple and other damages.* Claimant is a member of the putative Class. The members of the Class have suffered similar damages. Due to the conduct of Respondent and the inherently self-concealing nature of the conspiracy, the dollar amount of damages suffered by the Class cannot be determined without discovery. However, Respondent possesses enough information as to the supra-competitive prices of polyester staple in order to make a reasonable class wide tender of settlement." (Emphasis supplied.)

The letter demanded that the defendants pay all consequential damages caused by their illegal conduct, pay restitution and refunds to the plaintiff and members of the proposed class to the extent they had paid higher than competitive prices for products containing polyester staple, and reimburse the plaintiff and the proposed class members for their reasonable attorney's fees and expenses. None of the defendants responded to the demand letter.

Defendants Arteva Specialties S.A.R.L., doing business as KoSa (KoSa); E.I. DuPont de Nemours & Company (DuPont); DAK Fibers, LLC (DAK); and Wellman, Inc. (Wellman), moved to dismiss the complaint under Mass.R.Civ.P. 12(b)(6) on the ground that the demand letter was inadequate under G. L. c. 93A, § 9. Defendant Nan Ya Plastics Corporation, America (Nan Ya), separately moved to dismiss on the basis of lack of personal jurisdiction. After a hearing, the motion judge ruled that the demand letter did not reasonably describe the injury suffered and allowed the motion to dismiss on that ground with regard to all the defendants. The judge did not address Nan Ya's jurisdictional motion and argument. This appeal followed.

*Discussion.* The standards governing our review of the allowance of a rule 12(b)(6) motion to dismiss are well-established, as well as exceedingly indulgent to a plaintiff. "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nader* v. *Citron*, 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957). "Furthermore, the allegations of the complaint, as well as such inferences as may be drawn therefrom in the plaintiff's favor, are to be taken as true." *Nader* v. *Citron, supra.* "In passing on a rule 12(b)(6) motion, the court is not to consider the unlikelihood of the plaintiff's ability to produce evidence to support otherwise legally sufficient complaint allegations . . . however improbable appear the facts alleged . . . and 'notwithstanding expressions of denial and incredulousness as to ultimate proof by the defendants.' " *Brum* v. *Dartmouth*, 44 Mass. App. Ct. 318, 322 (1998), *S.C.*, 428 Mass. 684 (1999), quoting from *Eyal* v. *Helen Bdcst. Corp.*, 411 Mass. 426, 431 (1991).

These generous criteria have reduced a plaintiff's obstacle in surmounting a rule 12(b)(6) motion to a "minimal hurdle," *Bell* v. *Mazza*, 394 Mass. 176, 184 (1985), and they are applicable to c. 93A consumer class actions. *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 55 (2002). In this connection, we also observe that in enacting G. L. c. 93A the Legislature intended to create new substantive rights and procedural devices substantially broadening the vindication of consumers' rights, *id.* at 58, and that "technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice," *Baldassari* v. *Public Fin. Trust*, 369 Mass. 33, 41 (1975); this includes the reading of the demand letter requirement. See *id.* at 41-42. Indeed, as the *Ciardi* case made clear, in a G. L. c. 93A, § 9, case involving (as here) an indirect purchaser plaintiff's class action complaint alleging injury from being "forced to pay 'supra-competitive prices' " "as a result of [the defendants'] price-fixing conspiracy," the "plaintiff has a relatively light burden to carry to maintain her complaint . . . under rule 12(b)(6)." *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. at 65.

Even a complaint satisfying these liberal standards will, however, be unavailing to a plaintiff proceeding under G. L. c. 93A, § 9, unless she has complied with the distinct prerequisite to filing a suit, namely, serving a demand letter, reasonably describing the claimant's grievances, on the defendants being charged with the c. 93A violation. *Entrialgo* v. *Twin City Dodge, Inc.*, 368 Mass. 812, 813 (1975). General Laws c. 93A, § 9(3), provides in relevant part:

> "At least thirty days prior to the filing of any such action, a written demand for relief, identifying the *claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered*, shall be mailed or delivered to any prospective respondent" (emphasis supplied).

Complicating the matter in the instant case is that, in the demand letter, the plaintiff purported to represent not only herself but also a class of similarly situated "indirect purchasers" and demanded a tender of settlement with the entire class. No reported decision has addressed the level of "reasonable" description required of a demand letter by a plaintiff seeking to elicit a settlement on behalf of an as yet uncertified class. As always in such situations, we look at the pertinent words of the statute itself for guidance, see *Martha's Vineyard Land Bank Commn.* v. *Assessors of W. Tisbury*, 62 Mass. App. Ct. 25, 27-28 (2004), and cases cited:

> "At least thirty days prior to the filing of any such action, a written demand for relief, identifying *the claimant . . . ,* shall be mailed or delivered to any prospective respondent. Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by *the claimant* may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to *the injury actually suffered by the petitioner.* In all other cases, if the court finds for *the petitioner,* recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less

than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of said section two or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of .violated said section two." (Emphases supplied.)

G. L. c. 93A, § 9(3).

The singular forms of "claimant" and "petitioner"[7] are used in the statute to denote the party from whom a written demand letter is expected and to whom a written tender is made. Further, G. L. c. 93A, § 9(3), provides that when judging the reasonableness of the relief tendered, a court only looks at "the injury actually suffered by the petitioner." The plain language of G. L. c. 93A, § 9(3), thus provides that only a demand letter made on the claimant's own behalf is required to be served on defendants and responded to, at least until a "class of petitioners" has, at some future period, been certified after the preliminary hearing following the commencement of the action, as provided in G. L. c. 93A, § 9(2). (But see discussion, *infra.*)

The use of singular forms in § 9(3) does not appear to have been accidental. The Legislature, having enacted § 9(2) at the same time as § 9(3), see St. 1969, c. 690, could easily have stated in § 9(3) that a demand letter by a plaintiff purporting to represent a class, as authorized by § 9(2), should identify "the claimant and any similarly situated persons on behalf of whom the claimant brings the action"; that a tender should be made to and might be rejected by the "the claimant on behalf of such similarly situated persons"; or that the reasonableness of the

---

[7]The term "petitioner" is an inadvertently retained relic of the legislation that inserted § 9 into G. L. c. 93A at a time, prior to the 1974 institution of the Massachusetts Rules of Civil Procedure and the merger of law and equity, when a proceeding under the new provision of the statute was commenced by a "bill in equity" brought "in the superior court in equity" (see St. 1969, c. 690, inserting G. L. c. 93A, § 9[1]; G. L. c. 93A, § 9[1], was amended by St. 1978, c. 478, § 45, and rewritten in 1979, see now G. L. c. 93A, § 9[1], as appearing in St. 1979, c. 406, § 1), the person bringing such an action was called "the petitioner," and the "persons similarly situated" proposed to be represented by that petitioner consisted of "unnamed petitioners" who would, upon certification, become "the class of petitioners" (also relics remaining in the statute as codified, see G. L. c. 93A, § 9[2]).

tender would be evaluated "in relation to the injury actually suffered by the petitioner and the class of petitioners claimed to be represented," or words to similar effect. But it did not, and we do not read into a statute provisions the Legislature did not see fit to put there. See *Massachusetts Broken Stone Co.* v. *Weston,* 430 Mass. 637, 640 (2000); *Dube* v. *Contributory Retirement Appeal Bd.,* 50 Mass. App. Ct. 21, 23-24 (2000).

Such an omission additionally appears intentional because the important functions served by the demand letter requirement — to "encourage negotiation and settlement . . . [and] operate as a control on the amount of damages" that can ultimately be recovered, *Slaney* v. *Westwood Auto, Inc.,* 366 Mass. 688, 704 (1975) — could not practicably be realized (contrary to the plaintiff's expectation here) at a time when both the size of the eventual plaintiff class (if ever certified) and the total extent of their eventually claimed damages were unknown and could not possibly be estimated by a prospective defendant receiving the letter without knowledge of the actual scope and extent of the injuries to be alleged. (The plaintiff's contention, that merely by being identified as conspiratorial price-fixers in an unverified complaint prospective defendants may be presumed to possess the information necessary to make such a damage evaluation, finds no support in law, logic, or litigation realities.) Accordingly, in judging the sufficiency of such a precertification demand letter, we look solely to the description of the individual claimant's own injury, and the central issue in this case becomes whether the demand letter sufficiently described the injury suffered by the plaintiff herself.

There is no dispute as to the demand letter's sufficient identification of the claimant and the class she proposed to represent. There is also no dispute that the letter "reasonably describ[ed] the unfair or deceptive act or practice relied upon," G. L. c. 93A, § 9(3), by explicitly alleging that the defendants had conspired to "fix, raise, maintain and stabilize prices for the sale of polyester staple" and to "divide and allocate customers in connection with the sale of polyester staple" and by setting forth details of the conspiracy alleged to have occurred in the defendants' meetings and conversations. Price-fixing of any sort is unquestionably a violation of G. L. c. 93A. *Ciardi* v. *F. Hoffmann-La Roche, Ltd.,* 436 Mass. at 59-60.

The heart of the defendants' rationale for dismissal, adopted by the judge, is that the demand letter did not reasonably describe the injury suffered by the plaintiff. The judge faulted her for failing to identify the following:

> "1) the type of consumer product bought by the plaintiff containing Polyester Staple; 2) the approximate number of products containing Polyester staple bought by the plaintiff; 3) an estimate of the alleged economic injury suffered by the plaintiff; or 4) any correlation between anything any defendant is alleged to have done and the unidentified consumer product the plaintiff is alleged to have purchased."

We disagree with the judge's strictures.[8] First, the findings that the plaintiff failed to identify the type and number of consumer products she had bought cannot stand. The plain language of G. L. c. 93A, § 9(3), only requires the demand letter to "reasonably describ[e] . . . the injury suffered." Neither the statute nor any decided case requires the letter to identify the type or the number of consumer products purchased by a plaintiff in such a case. Moreover, the plaintiff's demand letter did describe the types (though not the numbers) of consumer products containing polyester staple that she had purchased (if only generically), as "shirts and other wearing apparel, linens and home furnishings."

Requiring a dollar estimate of the alleged "economic injury" suffered by the plaintiff was also not supportable. The letter, in our view, describes the injury in sufficient detail to permit the defendants reasonably (even if only roughly) to ascertain their exposure, at least to her as an individual and occasional purchaser of personal and household items containing polyester staple. We have held on more than one occasion that a demand letter need not contain a dollar amount of damages, so long as it describes the injuries in "sufficient detail to permit [the defendant] reasonably to ascertain its exposure." *Simas* v. *House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 140 (2001). See *Brandt*

---

[8]In light of the entire evidence and the statutory language, we conclude that, with respect to the demand letter, the judge made clearly erroneous findings and applied incorrect legal standards with respect to the latter, as explained *infra*. See *Kendall* v. *Selvaggio*, 413 Mass. 619, 620-621 (1992).

v. *Olympic Constr., Inc.*, 16 Mass. App. Ct. 913, 915 (1983) (demand letter held adequate where damages were apparent from facts alleged); *Fredericks* v. *Rosenblatt*, 40 Mass. App. Ct. 713, 717-718 (1996) (demand letter sufficient where injury was described and damages were reasonably ascertainable); *Tarpey* v. *Crescent Ridge Dairy, Inc.*, 47 Mass. App. Ct. 380, 391 (1999) ("the fact that the demand letter did not specify the dollar amount demanded is not decisive since . . . the letter was otherwise comprehensive and detailed").[9]

Contrary to the finding that the demand letter did not allege that the plaintiff "was injured in any manner, let alone reasonably describe the injury suffered," the letter expressly alleged that the plaintiff was injured "in the form of [having to pay] higher out-of-pocket costs to purchase products containing polyester staple and other damages" as a result of the defendants' price-fixing conspiracy.[10] In light of the type of consumer claim at issue, we believe that the letter "reasonably

---

[9]Although we acknowledge that the plaintiff could have been more specific about her alleged injury by estimating the quantities of her various purchases and their prices (information within her control), the cases do not demand more detail than is necessary to permit a reasonable response and tender. Given the relatively small dollar amount that such nonstaple and sporadically purchased items could cost an average person or household over the four-year statute of limitations period (G. L. c. 260, § 5A), "the amount of damages claimed was reasonably ascertainable," *Fredericks* v. *Rosenblatt*, 40 Mass. App. Ct. at 717-718, and it should not, in our view, have been unduly difficult for each defendant to have responded to the demand letter with a "ballpark" estimate by way of a settlement offer, which, even if objectively overly generous, would favorably compare with the anticipated expense of litigating a motion to dismiss, let alone a full-scale defense of such problematic conduct, and serve the valuable purpose of limiting recovery. It was obviously ill-advised of the defendants to fail to respond at all to the demand letter, since it exposed them to the risk under § 9(3) of having their silence treated as a "refusal to grant relief" and determined to have been "made in bad faith," when they clearly had reason to know that an antitrust price-fixing conspiracy of the sort complained of — a conspiracy that had already been adversely determined against one or more of the defendants in other jurisdictions — violated G. L. c. 93A, § 2, see *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. at 59-60, which in turn exposed them to the risk of the imposition of multiple damages. Cf. *Brandt* v. *Olympic Constr., Inc.*, 16 Mass. App. Ct. at 915-916; *Parker* v. *D'Avolio*, 40 Mass. App. Ct. 394, 395-396 (1996).

[10]In arguing that the demand letter was deficient for failing to contain "a damage figure" as to the injury sustained, the defendants cite *Thorpe* v. *Mutual of Omaha Ins. Co.*, 984 F.2d 541 (1st Cir. 1993), but *Thorpe* is distinguishable. The plaintiff's claim there arose from the insurance company's

describ[ed] . . . the injury suffered" by the plaintiff as an individual consumer when she allegedly bought a relatively few categories of overpriced household and personal goods that were unlikely to be frequently acquired by an average purchaser over a four-year period. Not only was she not required to identify a specific dollar figure of damages, but such a requirement might very well have made it impossible for her to have proceeded at all, since only through postcomplaint discovery could the defendants' materials and manufacturing costs, product pricing, distribution chains, and other data needed even to estimate the direct and subsequent "indirect" ripple effects of the price-fixing alleged be ascertained.

Under the judge's and the defendants' theory, that a heightened level of detail regarding injury and damages is required in a demand letter, a consumer seeking to challenge a price-fixing conspiracy as the representative of an allegedly injured class under G. L. c. 93A, § 9(2), would rarely, if ever, be able to satisfy the condition precedent to filing suit, given the evidentiary reality that true conspirators may be presumed to have taken steps to conceal their illegal conduct and its harmful effects. Cf. *Commonwealth* v. *Anselmo*, 33 Mass. App. Ct. 602, 604 (1992), quoting from *Commonwealth* v. *Nelson*, 370 Mass. 192, 200 (1976) ("circumstantial evidence . . . is the usual mode of proving [conspiracy], since it is not often that direct evidence can be had"); *Commonwealth* v. *Melanson*, 53

surveillance of him in connection with his receipt of disability benefits. *Id.* at 543. Both the United States District Court and the United States Court of Appeals for the First Circuit determined that the plaintiff's demand letter was inadequate because of its "failure to specify at least the physical injuries claimed." *Id.* at 544. Here, the plaintiff did describe the injuries claimed, i.e., increased out-of-pocket costs incurred when purchasing products containing polyester staple. We also observe that the defendants' extensive reliance on *Cassano* v. *Gogos*, 20 Mass. App. Ct. 348 (1985), and *Halper* v. *Demeter*, 34 Mass. App. Ct. 299 (1993), is similarly misplaced. *Cassano* v. *Gogos, supra* at 349-351, involved a demand letter that totally failed to alert the prospective defendant that he was threatened with a c. 93A action and exposure; it did not address the issues whether the would-be plaintiff had reasonably identified the alleged unlawful conduct or claimed injury. *Halper* v. *Demeter, supra* at 302 & n.5, a case under G. L. c. 93A, § 11, which does not have a demand letter requirement, merely referred to *Cassano* in dictum, for the general proposition that a demand letter must be "specific," a term that did not actually appear in the *Cassano* opinion and that has never been held to be synonymous with the "reasonable description" requirement of the statute.

Mass. App. Ct. 576, 580 (2002) ("a conspiracy rarely wears its heart on its sleeve"). We cannot construe the statute in such a way as effectively to negate the manifest legislative intent to provide a meaningful form of class action remedy to Massachusetts consumers affected by one of the most egregious of anticompetitive activities. See *Simon* v. *Solomon*, 385 Mass. 91, 100 (1982) ("A statute should not be read in a manner that defeats its intended utility"). See also *Manning* v. *Boston Redev. Authy.*, 400 Mass. 444, 453 (1987). This is particularly so since the intent of St. 1969, c. 690, was to broaden, rather than narrow or limit, the ability of Massachusetts citizens to vindicate their rights against unfair, deceptive, and anticompetitive acts and practices. Cf. *Commonwealth* v. *Kapsalis*, 26 Mass. App. Ct. 448, 455 (1988).

We also disagree with the finding that the plaintiff failed to identify any causal relationship between the defendants' alleged conduct and the products the plaintiff claimed to have purchased.[11] The plaintiff expressly asserted in the demand letter that she was "overcharged for products that contain polyester

---

[11]In the course of making that finding, the judge commented that "the nature of the product in question, Polyester Staple, seems to mitigate against finding such a causal connection due to the many junctures in manufacturing and retailing at which a cost increase could have been absorbed through the stream of commerce." By that observation, the judge appeared to suggest that the plaintiff could not establish, or would have great difficulty establishing, her proximately caused actual damages, "a required element of a successful G. L. c. 93A claim." *Aspinall* v. *Philip Morris Cos.*, 442 Mass. 381, 401 (2004). To the extent the judge cited and may have relied on *Aspinall* for the proposition that "in the absence of a causal relationship between the alleged unfair acts and the claimed loss, there can be no recovery," he seems to have inappropriately conflated the issue whether the plaintiff will ultimately be able to prove causation so as to be entitled to recover *any* damages with the question whether the plaintiff has sufficiently, i.e., reasonably, described her injury suffered in her demand letter. As the court in *Ciardi* v. *F. Hoffmann-La Roche, Ltd.*, 436 Mass. at 65, made clear, "doubt as to whether a particular claim can be proved is not a proper basis for dismissing a complaint under rule 12(b)(6)."

The defendants have brought to our attention in support of their position the Supreme Judicial Court's recent decision in *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston, Inc.*, 445 Mass. 790 (2006), but *Hershenow* did not involve any issue as to the sufficiency of the demand letter, so their reliance on it is unavailing. On the issue of causation, *id.* at 798, the court reiterated *Aspinall's* holding, to which we of course adhere, that "causation is a required element of a successful G. L. c. 93A claim." Here we only reject the defendants' and

staple . . . as a result of" the defendants' price-fixing, as well as "deprived of the benefits of competition among existing polyester staple manufacturers."

As noted earlier, the plaintiff cast the demand letter as one on behalf of the entire putative class as well as herself. If and when a class is certified, it is unclear — and we express no opinion on the issue — whether one or more new demand letters would be required or even appropriate,[12] particularly in light of the mandate of § 9(2) that, once a class is certified, the action may not be settled or compromised without court approval.

Finally, as noted earlier, the judge did not act on Nan Ya's separate motion to dismiss for lack of personal jurisdiction.[13] The parties argue that this court can and should nonetheless decide the issue because they have fully briefed it (and, unsurprisingly, reached opposite conclusions). However, the question whether a tribunal has personal jurisdiction is peculiarly fact-specific and fact-intensive, possibly including difficult inquiries into parties' intentions. See *Droukas* v. *Divers Training Academy, Inc.*, 375 Mass. 149, 152-159 (1978); *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. 1, 2, 5-12 (1979); *Haddad* v. *Taylor*, 32 Mass. App. Ct. 332, 334-336 (1992); *Stanton* v. *AM Gen. Corp.*, 50 Mass. App. Ct. 116, 117-121 (2000). Furthermore, "the [trial] courts of the Commonwealth

the judge's proposition that the plaintiff's potential difficulties in establishing and quantifying her proximately caused losses from being overcharged as a result of the defendants' price-fixing precludes as matter of law a finding of the sufficiency of her demand letter.

[12]Compare *Baldassari* v. *Public Fin. Trust*, 369 Mass. at 41-42. Cf. *Tarpey* v. *Crescent Ridge Dairy, Inc.*, 47 Mass. App. Ct. at 391-392 (suggesting the theoretical possibility of additional post-suit demand letters); *Halper* v. *Demeter*, 34 Mass. App. Ct. at 303 & n. 7 (noting that, where the plaintiff was allowed to raise a c. 93A claim in an amended complaint, the defendant should have an opportunity to amend his answer and to "tender a damage-limiting offer of settlement").

[13]The judge's dismissal of the plaintiff's claims against Nan Ya along with her claims against the other defendants on the basis of the supposed inadequacy of the demand letter was independently erroneous, because Nan Ya's motion to dismiss did not mention, much less rest on, that ground and because the demand letter requirements of G. L. c. 93A, § 9(3), do not apply to respondents who (as Nan Ya in its motion papers explicitly asserted was true of it) do not have a place of business or assets within the Commonwealth.

are afforded considerable procedural leeway in determining proof of the factual basis for the 'minimum contact' requirement necessary to satisfy the 'fair and reasonable' due process standard," *Cepeda* v. *Kass*, 62 Mass. App. Ct. 732, 737 (2004), which may take the form of ordering discovery prior to ruling on the motion to dismiss, see *Good Hope Indus., Inc.* v. *Ryder Scott Co.*, 378 Mass. at 13 n. 20; *Tatro* v. *Manor Care, Inc.*, 416 Mass. 763, 764 (1994), or holding an evidentiary hearing on the motion. *Cepeda* v. *Kass*, 62 Mass. App. Ct. at 737-738.

Consequently, we deem the trial court to be the more appropriate forum to marshal the pertinent facts and apply the fact-dependent jurisdictional standards under the long-arm statute, G. L. c. 223A, § 3, at least in the first instance. For such an inquiry, the trial court is also better positioned to decide the issue in question as a matter of sound judicial administration; at the same time we keep in mind (while expressing no view as to how the jurisdictional issue might be resolved) that this allocation of decision-making does not preclude appellate correction when necessary.

*Judgment reversed.*