Neel, Stephen E., J.
In this putative class action seeking post-arbitration award interest from defendant insurance companies in the context of uninsured and underinsured motorist coverage, the Court directed the parties to address, by motions for partial summary judgment, two issues:
1. Are the plaintiffs legally entitled to post-arbitration award interest in the absence of contractual *309 language that specifically addresses the question of post-arbitration award interest?
2. If so, what is the legal basis for such an entitlement: common law, general equitable principles, and/or one or more statutes, including but not limited to Chapter 93A?
After hearing, and for the reasons set out below, the Court concludes that, while no contractual language or statute specifically addresses post-arbitration award interest, the plaintiffs are nevertheless entitled to such interest under common law.
The Court also addresses herein, and denies, the motions of three defendants, Hanover Insurance Company (Hanover), Arbella Mutual Insurance Company (Arbella), and Commerce Insurance Company (Commerce), for summary judgment based on their respective proposed or actual tenders of post-arbitration award interest.
BACKGROUND
Plaintiffs, each an insured under an automobile insurance policy issued by one of the defendants, filed claims for uninsured or underinsured motorist coverage, and proceeded to arbitration with defendants on those claims as required under the policies. Plaintiffs received arbitration awards in their favor, pursuant to which defendants issued checks to plaintiffs in the amount of the awards. The payments did not include any amount for post-award interest from the dates of the awards to the dates of payment of those awards.
Plaintiffs filed the original complaint in this action on March 26, 2007. On April 3, 2007, plaintiffs’ counsel sent defendants demand letters pursuant to G.L.c. 93A, on behalf of plaintiffs and others similarly situated, demanding payment of post-arbitration award interest, costs, and attorneys fees. In response, all defendants denied liability, several either tendered or offered to tender post-award interest in settlement of plaintiffs’ individual claims,[3] and most declined to pay such interest to the putative class.[4]
On May 8, 2007, plaintiffs served on defendants an amended complaint that added claims for violations of G.L.c. 93A and breach of common-law duty. The complaint as amended asserts claims for confirmation and entry of judgment pursuant to G.L.c. 251, §§11, 14 (Count I); breach of contract (Count II); breach of the implied covenant of good faith and fair dealing (Count III); violations of G.L.c. 93A, §§2, 9 (Count IV); and breach of common law duty (Count V).
DISCUSSION
I. Summary Judgment Standard
Summary judgment may be granted where there are no genuine issues as to any material fact and where the moving party is entitled to summary judg-mentas a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing parly’s case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
II. Count I (Confirmation and Entry of Judgment Pursuant to G.L.c. 251)
Plaintiffs address the questions posed at the beginning of this memorandum, in the first instance, in their argument regarding Count I of the Amended Complaint; defendants likewise devote much of their argument to Count I. That count asserts that, although the underlying arbitration awards have been paid, plaintiffs are entitled to confirmation of the awards, and entry of judgment with regard to post-award interest on those awards, under the Uniform Arbitration Act for Commercial Disputes, G.L.c. 251, §§11, 14.[5] The basis for both confirmation and post-award interest, plaintiffs contend, is found in Murphy v. National Union Fire Ins. Co., 438 Mass. 529 (2003).[6]
In Muiphy, plaintiff and his wife filed an underin-sured motorist claim with their insurance company, National Union, following a motor vehicle accident. The parties arbitrated the amount of damages owed and, on July 9, 2001, the panel awarded the Murphys $1,610,000. The award did not mention interest, and the Murphys informed National Union that they expected post-award interest to be included in the eventual payment on the award. On July 12, 2001, the Murphys filed suit seeking confirmation of the arbitration award pursuant to G.L.c. 251, §§11, 14, plus interest and costs. On August 6, 2001, National Union delivered a check to the Murphys for the amount of the award, but the check did not include interest. Murphy, 438 Mass. at 530.
The Supreme Judicial Court concluded that the Murphys were not entitled to a judgment confirming their arbitration award:
(O)nce full payment of the arbitration award was made . . . , confirmation of the award became moot because the obligation owed to the Murphys had been satisfied. The dispute over damages pursuant to the underinsured motorist provisions of the insurance policy had been resolved, and it is well established that courts only decide actual controversies.
Id. at 533.[7]
The court also concluded, however, that “[a]lthough the Murphys were not entitled to a judgment confirming their arbitration award [because the award had already been paid], they were entitled to a judgment *310 to recover interest on that award.” Id. Indeed, the court characterized that entitlement as “the rule in Massachusetts,” adopted “[t]o encourage ‘swift obedience’ to the award without the necessity of court proceedings . . .” Id. at 534.
On the basis of Murphy, the Court concludes that plaintiffs may not bring a claim seeking confirmation of the arbitration awards when the underlying award has already been paid; to rule otherwise would, in effect, allow plaintiffs to utilize G.L.c. 251 to amend their awards to include post-award interest, which Murphy prohibits. Each plaintiff has already been paid what the award itself entitled him or her to receive, and therefore there is nothing to confirm.
What Murphy does allow, on the other hand, is a “judgment,” separate from the confirmation procedure under c. 251, “to recover interest on that award.” Murphy, 438 Mass. at 533. Such a judgment derives not from the confirmation of an award which has already been paid — as defendants correctly point out — but instead from the common-law “rule in Massachusetts” enunciated in Murphy.
Defendants contend that, even if the rule stated in Murphy establishes a common-law right to post-award interest, the rule does not impose upon them an “automatic” obligation to pay it. As defendant Metropolitan Insurance Company (Metropolitan) puts it, “there is no automatic legal entitlement to post-arbitration award interest, but rather such awards are potentially available based solely upon equitable considerations ...” Metropolitan’s Memorandum of Law, at 2.
Specifically, Metropolitan argues that the right to post-award interest is “based on equitable principles to compensate an aggrieved party for the wrongful delay of payment.” Id. at 5. In other words, in Metropolitan’s view an insured has no cause of action for post-award interest until it can demonstrate wrongful — i.e., inequitable — delay. Metropolitan characterizes Murphy and two other cases cited by plaintiffs, Reilly v. Metropolitan Prop. & Liab. Ins. Co., 412 Mass. 1006 (1992), and Sansone v. Metropolitan Prop. & Liab. Ins. Co., 30 Mass.App.Ct. 660 (1991), as “merely address [ing] the time period upon which to assess post-arbitration award interest when such interest is warranted . . . None of the three cases expressly state that the payment of post-arbitration award interest automatically begins to run from the date of the award.” Id. at 6.
To the contrary, as noted above Murphy specifically addresses that issue:
The defendants argue that the Superior Court judge did not have the authority to grant interest where the arbitration award was paid within thirty days of the time it was rendered. However, we have stated that “to encourage ‘swift obedience’ to the award without the necessity of court proceedings, the rule in Massachusetts is that post-award interest runs from the date of the award.” [citing Reilly and Sansone] ... As such, the Murphys were entitled to a judgment for postaward interest from the date of the award, July 9, 2001, until payment was received, here, August 6, 2001.
Id. at 533-34 (emphasis supplied).
Murphy thus disposes of defendants’ argument that plaintiffs must initiate “some form of court proceeding . . . , either to seek appointment of an arbitrator or confirm an award prior to payment,” before they are entitled to payment of post-award interest.[8] Metropolitan’s Opposition, at 8. Nor is Murphy inconsistent with the notion that equitable principles may affect the amount of post-award interest to which an insured is entitled: that the obligation to pay such interest may be subject to reduction (because, for example, the insurer did not receive notice of the award when made, see, e.g., Mahan v. Arbella Mut. Ins. Co., 438 Mass. 1010 (2003), or because of some delay attributable to the insured) does not mean that an insurer owes nothing until the issue is resolved.[9]
In any event, “ ‘swift obedience’ to the award without the necessity of court proceedings” is encouraged by requiring the insurer to pay at least that post-award interest which in good faith it must acknowledge is due, rather than allowing the insurer to pay nothing on the ground that some part of that interest may be subject to an equitable reduction.
Watertown Firefighters, supra, 376 Mass. 706, which defendants cite for the proposition that post-award interest is subject to equitable considerations and therefore not “automatic,” is not inconsistent with the above analysis of Murphy. In Watertown Firefighters, which involved the arbitration of a collective bargaining agreement, the court noted that
[t]he question of the running of interest on a last and best offer [arbitration] award was raised in [the] Marlborough Firefighters [case] but, while indicating a leaning toward allowing interest from the date of the award, we did not have to decide the matter . . . We now hold that such should be the general rule for arbitrations of this kind, for the award fixes definite or ascertainable dollar amounts and is by the statute declared presumptively “binding upon the parties” when made. The rule commends itself also because it encourages swift obedience by the parties to the award ... At the same time, we think the general rule may bend in particular cases to equitable considerations.
Id. at 717-18. As in the present context, involving uninsured and underinsured motorist claims, the claims for post-award interest in Watertown Firefighters were as a “general rule” allowed from the date of the award, subject to adjustment because of “equitable considerations.” Defendants’ argument that “there is no automatic legal entitlement to post-arbitration award interest, but rather such awards are potentially available based solely upon equitable con *311 siderations . . . ,” Metropolitan’s Memorandum at 2, thus turns Watertown Firefighters on its head: by characterizing “equitable considerations” as the “sole” basis for post-award interest, defendants seek to make them the rule, rather than exceptions to the “general rule” that such interest is due.
Because Count I seeks confirmation of arbitration awards which have been paid, contrary to the holding in Murphy, it cannot support plaintiffs’ claim for post-award interest. Accordingly, the Court will grant summary judgment for defendants as to that count.
III. The Remaining Counts
In view of the Court’s conclusion that plaintiffs are entitled to post-award interest under common law as enunciated in Murphy, Count v. of the Amended Complaint (breach of common law duty) states a claim, and to that extent survives summary judgment.
To the extent that defendants attack Count IV (violation of c. 93A) on the basis that plaintiffs, in Count I, seek to manufacture c. 93A liability for failure to pay interest on arbitration awards that defendants have paid, the Court’s ruling as to Count I eliminates such concerns. Insofar as Count IV is based on breach of common-law duty, however, that count survives the present motions — in part because whether an insurer’s failure “automatically” to pay post-award interest amounts to an unfair or deceptive act or practice is not a question before the Court. That and other challenges to the c. 93A count are reserved.
Counts II (breach of contract) and III (breach of the implied covenant of good faith and fair dealing), which depend on a contractual basis for the obligation to pay post-award interest, do not survive the Court’s conclusion that the obligation derives from common law only.
IV. Hanover’s Motion for Summary Judgment
As noted above, Hanover moves for summary judgment based on its tenders of post-arbitration award interest.
A. Background
With regard to Hanover’s motion, the Court recites the following facts and reasonable inferences therefrom, viewed in the light most favorable to the plaintiffs.
Plaintiff Tony Vangelist (Vangelist) is the only named plaintiff who makes specific allegations against Hanover. On May 5, 2003, Vangelist filed a claim for underinsured coverage under his Hanover automobile insurance policy. Pursuant to the policy, Hanover and Vangelist entered into binding arbitration to determine Vangelist’s claim. On April 10, 2006, an arbitrator awarded Vangelist $8,556. Hanover paid that amount to Vangelist by check on April 12, 2006, but the payment did not include any interest for the period of time between April 10 (the date of the award) and April 12 (the date of payment).
Vangelist filed the complaint in this action on March 26, 2007, and served Hanover on March 28. On April 3, 2007, Vangelist’s counsel sent Hanover a demand letter pursuant to G.L.c. 93A on behalf of Vangelist and the putative class of persons to whom Hanover had allegedly failed to pay post-arbitration award interest. The demand letter sought post-award interest, costs, and attorneys fees.
On April 12, 2007, Hanover hand-delivered a check in the amount of $389.07 as a tender for the amount of money owed to Vangelist. The amount of the check reflected the total of:
(1) $14.07 (interest on the total award for the two days between award and payment, plus three days for mailing) at the rate of twelve percent per annum; plus
(2) $375 (Vangelist’s estimated costs up to the date of tender, including $275 filing fee plus $100 for additional costs).
Hanover’s April 12 tender applied only to Vangelist and did not include a tender to the putative class that Vangelist purported to represent. Vangelist rejected Hanover’s tender, after which, on May 29, 2007, Hanover paid the tender amount of $389.07 into court.
On May 8, 2007, the plaintiffs served on Hanover the Amended Complaint adding claims for violations of G.L.c. 93A and breach of common-law duty. On June 26, 2007, the parties agreed to extend until July 23, 2007, the deadline for Hanover’s answer to the Amended Complaint. Hanover filed its answer on that date.
On July 19, 2007, Hanover filed a Suggestion of Intent to Tender, pursuant to G.L.c. 232A, §1. The Suggestion outlined Hanover’s plan to tender payments to 205 potential claimants (awardees) identified by Hanover through an internal review process. The awardees comprise only those policy-holders who won awards, pursuant to uninsured or underinsured motorist claims, between March 26, 2001 and May 31, 2007 (reflecting Hanover’s position that a six-year statute of limitations bars any claims for post-award interest arising before March 26, 2001). It is undisputed that Hanover did not mail or otherwise provide any checks to any putative class members prior to filing its Suggestion of Intent to Tender with the Court.
B. Discussion
Hanover argues that its tender of post-award interest, pursuant to the tender statute, G.L.c. 232A, §1, operated to extinguish all of plaintiffs’ claims against it. Vangelist counters that Hanover’s tender was untimely and that, even if the tender was timely, Hanover inadequately defined the putative class of persons to whom Hanover owed post-award interest.[10]
G.L.c. 232A, §1 provides:
The payment or tender of payment of the whole amount due on a contract for the payment of money after it is due and payable and before action is commenced shall, if pleaded, have the same effect as if *312 made at the time provided in the contract. Such payment or tender may also be made after action has been commenced if made at least four days prior to the date by which the answer must be filed, with costs to the time of payment or tender. The tender last mentioned may be made to the plaintiff or to his attorney in the action, and, if not accepted, the defendant may avail himself of the tender in defense in like manner as if made before the commencement of the action, bringing into court the amount so tendered.
1. Hanover’s Tender to Vangelist
Pursuant to the plain language of the statute, Hanover timely tendered payment of post-award interest to Vangelist. Because Hanover initially had until April 17, 2007, by which to answer the plaintiffs’ original complaint, Hanover’s tender to Vangelist on April 12 was made “at least four days prior to the date by which the answer must be filed.” G.L.c. 232A, §1.
While Hanover’s tender to Vangelist was timely, effective tender to Vangelist will not necessarily serve to moot all claims brought by Vangelist on behalf of the putative class. See Wolf v. Comm’r of Pub. Welfare, 367 Mass. 293, 299-300 (1975):
[In] a case of asserted importance, “capable of repetition, yet evading review,” ... a court should take particular care that judicial review not be foreclosed on the basis of technical “mootness.” If the underlying controversy continues, a court will not allow a defendant’s voluntary cessation of his allegedly wrongful conduct with respect to named plaintiffs to moot the case for the entire plaintiff class . . . Thus, even after the named plaintiffs individual claim is satisfied and technically she no longer is a member of the class, she properly might continue to represent the class in vindicating the asserted rights.
2. Hanover’s Tender to the Putative Class
(a) “Before Action is Commenced”— The First Sentence of G.L.c. 232A, §1
Hanover argues that because the class is putative, an action has not “commenced” as contemplated by the first sentence of the tender statute, and that, contrary to the plaintiffs’ assertions, Hanover’s alleged tender to the putative class is timely. See G.L.c. 232A, §1. Hanover does not cite, nor has the Court found, any direct support for this proposition. Instead, Hanover urges the Court to analogize from a decision in which the Appeals Court “ruled that a recipient of a Chapter 93A demand letter, purportedly on behalf of the claimant and others similarly situated, need respond only to the claimant’s individual claim of injury, and need not make a response or tender to the entire putative class ‘at least until a ’’class of petitioners" has, at some future period, been certified.’ “ Hanover’s Reply Brief at 3, citing Richards v. Arteva Specialties S.A.R.L., 66 Mass.App.Ct. 726 (2006), rev. denied, 447 Mass. 1111 (2006).
The issue in Richards was whether c. 93A, §9(3) requires that a demand letter to a defendant from the named plaintiff in a putative class action, brought under c. 93A, §9(2), must reasonably describe the injuries suffered by the named plaintiff only, or must also describe the injuries to the putative class. The court concluded that the plain language of c. 93A requires “that only a demand letter made on the claimant’s own behalf is required to be served on defendants and responded to, at least until a ‘class of petitioners’ has . . . been certified.” Richards, 66 Mass.App.Ct. at 732. The court based its conclusion on the legislature’s presumably purposeful election to require that the demand letter set forth only the named plaintiffs injury:
The Legislature, having enacted §9(2) at the same time as §9(3), . . . could easily have stated in §9(3) that a demand letter by a plaintiff purporting to represent a class, as authorized by §9(2), should identify “the claimant and any similarly situated persons on behalf of whom the claimant brings the action” ... or words to similar effect. But it did not, and we do not read into a statute provisions the Legislature did not see fit to put there.
Id. at 734.
Hanover argues that “(t]he same rationale applies with equal force to a tender under Chapter 232A. As in Chapter 93A, the legislature expressly used the singular form ‘plaintiff and otherwise made no reference to a tender to the members of an uncertified class.” Hanover’s Reply Brief, at 4. The problem with that argument is that, while c. 93A, §9(2) expressly provides for class actions, and therefore gives rise to the question of interpretation of the requirements of §9(3) addressed in Richards, there is (unsurprisingly) no mention of class actions in c. 232A, §1, which applies to any contract action.
The Court concludes that a more persuasive argument is that based on Wolf, wherein the court explained that, during the period of time between the plaintiffs’ assertion that the claim is brought in a representative capacity and the court’s certification, a judge should “treat[ ] the suit as a class suit for the purposes of dismissal or compromise.” Wolf, 367 Mass. at 298. Because Hanover’s argument based on its alleged tender to the putative class is tantamount to an argument for dismissal, the Court will treat this case as a class action which, for purposes of the tender statute, has “commenced.”
(b) “At Least Four Days Prior” — The Second Sentence of G.L.c. 232A, §1
In view of the Court’s conclusion that the class action has “commenced,” the issue becomes whether Hanover’s alleged tender was nevertheless timely under the second sentence of the statute.
The Court docketed Hanover’s Suggestion of Intent to Tender (Suggestion) on July 19, 2007, four days prior to the July 23, 2007 deadline for filing a responsive pleading to the Amended Complaint.[11] The Suggestion con *313 tained Hanover’s plan for the manner in which it intended to proceed with tendering to the putative class, but did not contain any actual tenders.[12] “A mere offer to pay or a statement that the party has the money and is ready and willing to pay, without actual production of it, is not sufficient to constitute a valid tender.” Mondello v. Hanover Trust Co., 252 Mass. 563, 567 (1925). Thus, by merely filing a Suggestion rather than actually tendering, Hanover did not comply with the requirement that any tender pursuant to G.L.c. 232A, § 1 occur at least four days prior to filing an answer.
Because Hanover did not tender to the putative class within the period required by G.L.c. 232A, §1, there is no need to decide whether Hanover correctly defined the scope of class members to which its tender was untimely. Counts IV and v. against Hanover therefore survive Hanover’s motion for summary judgment.
V. Arbella’s Motion for Summary Judgment
Arbella’s motion is similar to Hanover’s.
A. Background
Plaintiff Ann Marie Chiaradonna (Chiaradonna) is the only named plaintiff who makes specific allegations against Arbella. On February 27, 2005, Chiaradonna filed a claim for underinsured coverage under her Arbella automobile insurance policy. Pursuant to the policy, Chiaradonna and Arbella entered into binding arbitration to determine Chiaradonna’s claim. On November 21, 2005, an arbitrator awarded Chiaradonna $41,000. Arbella paid that amount to Chiaradonna on December 14, 2005, but the payment did not include any interest for the period of time between November 21 (the date of the award) and December 14 (the date of payment).
Chiaradonna filed the complaint in this action on March 26, 2007, and served Arbella on March 29. By agreement of the parties, Arbella received an extension until May 18 to respond to the complaint. On April 3, 2007, Chiaradonna’s counsel sent Arbella a demand letter pursuant to G.L.c. 93A, on behalf of her and the putative class of persons to whom Arbella had allegedly failed to pay post-arbitration award interest. The demand letter sought post-award interest, costs, and attorneys fees.
On May 4, 2007, in response to the c. 93A demand letter, Arbella tendered a check in the amount of $754. Arbella explained in the accompanying letter that it intended to avail itself of the tender statute, G.L.c. 232A, to discharge all claims against it. The check reflected the total of:
(1) $324 (interest on the arbitration award from November 21, 2005 through December 15, 2005 at twelve percent per annum); plus
(2) $55 (interest from December 15, 2005 through May 4, 2007, plus three days for mailing); plus
(3) $375 (filing and service costs).
Arbella’s May 4 tender applied only to Chiaradonna, and did not include a tender to the putative class. Chiaradonna, through her attorney, rejected Arbella’s tender on May 11, 2007. On December 6, 2007, Arbella paid the tender amount of $754 into court pursuant to G.L.c. 232A, §1.
On May 8, 2007, the plaintiffs served Arbella with the Amended Complaint, which added claims for violations of G.L.c. 93A and breach of common-law duty. On June 25, 2007, in its responsive pleading, Arbella pled the May 4 tender as an affirmative defense. It is undisputed that Arbella did not make a tender to the putative class at any time prior to filing its answer to the plaintiffs’ Amended Complaint.[13]
B. Discussion
Arbella’s motion is grounded largely on the tender statute addressed in the above discussion of Hanover’s motion, which will not be repeated here. As with Hanover, Arbella’s tender of post-award interest to its insured was timely made (on May 4, 2007), “at least four days prior to the date by which the answer must be filed” (May 18, 2007). G.L.c. 232A, §1.[14]
While Arbella’s tender to Chiaradonna was timely, effective tender to Chiaradonna will not serve to moot all claims brought by Chiaradonna on behalf of the putative class. See Wolf v. Comm’r of Pub. Welfare, supra, 367 Mass. 293, 299-300 (1975), discussed above. Likewise, for reasons already stated, the Court rejects Arbella’s árgument that its alleged tender to the putative class is timely because the class is putative, and therefore that an action has not “commenced” as required by the first sentence of the tender statute. See G.L.c. 232A §1.
Finally, in view of the Court’s ruling that the putative class action has “commenced” for purposes of applying the tender statute to the class action claims, the issue becomes whether Arbella made its alleged tender to the putative class by June 21, 2007 (four days prior to the June 25 deadline for Arbella’s answer to the Amended Complaint). Arbella has not established, on the summary judgment record, that it did so. Accordingly, Arbella is not entitled to summary judgment under G.L.c. 232A, §1.
VI. Commerce’s Motion for Summary Judgment
Commerce seeks summary judgment as to Count IV on the basis that its tender of post-award interest to its insured, plaintiff Vladislav Seredkin, was a reasonable and timely response to plaintiffs’ c. 93A demand letter. Commerce’s Memorandum, at 24. The Court concludes that genuine issues of material fact remain as to that claim, and the motion will be denied.
ORDER
For the foregoing reasons, defendants’ motions for partial summary judgment are ALLOWED as to Counts I, II, and III, and (to the extent that they are based upon the Court’s answers to the two questions set out at the beginning of this Memorandum and Order) are DENIED as to Counts IV and V. Defendants Hanover *314 Insurance Company and Arbella Mutual Insurance Company’s motions for summary judgment (to the extent that they are based upon G.L.c. 232A, §1) are DENIED. Defendant Commerce Insurance Company’s motion for summary judgment (to the extent based upon its alleged compliance with G.L.c. 93A) is DENIED. To the extent not decided herein, the remaining motions for summary judgment are DENIED.
It is further ORDERED that counsel shall meet and confer with the goal of submitting to the Court, on or before March 16, 2009, a joint proposal listing issues to be decided in light of the foregoing (e.g., statutes of limitations, and challenges to Count IV which either are not addressed by the Court herein, or were not raised in the present motions), and proposing a case management schedule for (i) the manner and timing of briefing of such issues, (ii) staging of discovery; and (iii) briefing and determination regarding class certification. A scheduling conference will be held on March 25, 2009, at 2:00 p.m.

Safety, in its April 18, 2007 response to the c. 93A demand letter; Hanover, on April 12, 2007, as recounted in its May 3, 2007 response to the c. 93A demand letter; Commerce, in its May 2, 2007 response to the c. 93A demand letter; Arbella, in its May 4, 2007 response to the c. 93A demand letter.

Hanover and Arbella allege that they have paid post-award interest to individuals they have identified as the putative class of award recipients under their respective policies. See discussion below.

G.L.c. 251, §11 (Award; confirmation by court): “Upon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections twelve and thirteen.”
G.L.c. 251, §14 (Judgment or decree; costs): “Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements in connection therewith may be awarded by the court.”

Plaintiffs do not contend that their right to post-award interest is found in any statute (other than, by implication, the post-judgment interest statute, G.L.c. 235, §8, an argument rejected herein). As far as the policies themselves are concerned, plaintiffs offer the conclusory statement that the contracts “plainly required the insurance companies to pay Plaintiffs the amount of the awards, including interest.” Plaintiffs’ Memorandum in Support of Partial Summary Judgment, at 8. Their basis for arguing a contractual obligation appears to be that Murphy establishes a legal requirement which the contracting parties were required to follow. Id. Plaintiffs’ argument is unpersuasive. In view of the lack of reference in the policies to post-award interest, and absent any compelling authority to the contrary, the Court concludes that plaintiffs have established no contractual right to post-award interest.

The court noted that, in Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 37 (1991), it had concluded that an arbitration award “does not constitute a ‘judgment’ on which multiple damages maybe calculated in a separate proceeding pursuant to G.L.c. 93A, §9.” Murphy, at 532.

The Murphy decision likewise disposes of Commerce’s argument that “(o]nly confirmed awards were entitled to post-arbitration award interest,” Commerce’s Memorandum, at 12, because the court affirmed judgment awarding post-award interest even as it was vacating judgment confirming the award itself. Interestingly, one of the cases Commerce cites is Sansone, in which the Superior Court confirmed an award that the insurer had already paid, and ordered both pre-and post-award interest. On appeal, the defendant challenged only the interest awards, not the mootness-of-confir-mation issue that Murphy ultimately decided. Ruling on the Superior Court’s award of post-award interest, the court in Sansone makes no reference to court proceedings regarding confirmation; rather, citing Watertown Firefighters, Local 1347, I.A.F.F., AFL-CIO v. Watertown, 376 Mass. 706 (1978) (see discussion below), for the proposition that “[t]o discourage ‘swift obedience’ to the award without the necessity of court proceedings, the rule in Massachusetts is that post-award interest runs from the date of the award,” the court upheld the judgment of post-award interest.

For the same reason, the Court rejects defendants’ argument that, because they do not know what rate of interest to pay, they should pay none. The Court notes that defendants have suggested statutory interest rates which “potentially address the question of what rate of interest would be applicable . . .” Defendant Liberty Mutual Insurance Company’s Memorandum, at 6 (emphasis in original). Whether equitable considerations and appropriate interest rates are factors that vary from insured to insured, and may therefore bear on class certification issues, is a question for another day.

Vangelist does not contend that Hanover should have employed an interest rate higher than the twelve percent it tendered.

The plaintiffs’ argument that the June 26 stipulation did not contain a stipulation to expand the time available to Hanover in which to utilize the tender statute is unavailing. The stipulation expanded the time in which Hanover could file a “responsive pleading.” The tender statute provides that any tender must be offered “at least four days prior to the date by which the answer must be filed.” G.L.c. 232A, §1. There is no support in either the stipulation or the tender statute for the distinction which plaintiffs ask the Court to make, especially where plaintiffs were on notice that Hanover intended to utilize the tender statute by virtue of its earlier tender to Vangelist.

Hanover alleges that it actually mailed checks for post-award interest to the putative class on September 19, 2007. The plaintiffs respond that they are “without information” to either confirm or deny this fact. Regardless, it is undisputed that Hanover did not mail any checks to the putative class prior to July 23, 2007, when its answer to the Amended Complaint was due.

Arbella alleges that it has identified 201 individuals who received uninsured and underinsured motorist awards, and has paid interest on those awards. Plaintiffs neither confirm nor deny that allegation. Regardless, it is undisputed that Arbella did not mail any checks to the putative class prior to June 25, 2007, when it filed its answer.

As before, plaintiffs argue that the parties’ stipulated extension for service of an answer (here, until May 18) did not contain a stipulation to expand the time available to Hanover in which to utilize the tender statute. For the reasons stated above, the argument is unavailing.